BURNES v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, *Appellant.*

Division Two, June 4, 1895.

1. **Railroad**: SERVANTS: SAFETY OF PLACE FOR WORK: NEGLIGENCE.  A servant familiar with an elevated railroad track and voluntarily electing to work thereon can not recover of the company, for injuries received in falling therefrom, on the ground that it was not a reasonably safe place on which to work.

2. ———: ———: OBSTRUCTION ALONG TRACK: NEGLIGENCE.  A railroad employee who is thrown down and injured from stepping on a grain door left along its track can not recover from the company, in the absence of any proof that the door was placed there by someone for whose acts the defendant would be liable or in the absence of evidence that the company had knowledge of the obstruction or by the exercise of ordinary care could have discovered it.

3. ———: ———: INDEPENDENT CONTRACTOR: NEGLIGENCE.  A railroad company is required to keep its road track and yards in a reasonably safe condition for its employees and it can not avoid responsibility by letting out a part of its duties as a common carrier to an independent contractor.

*Appeal from Jackson Circuit Court.*—HON. JAS. GIBSON, Judge.

REVERSED.

*Wallace Pratt, Frank Hagerman* and *I. P. Dana* for appellant.

(1)   There being an entire failure to prove either actual or constructive notice to defendant of the presence, on the elevated walk, of the piece of door, the court should have directed a verdict in defendant's favor. *Railroad v. Platt,* 89 Ill. 141; *Painton v. Railroad,* 83 N. Y. 7; *Railroad v. Ledbetter,* 34 Kan. 326; *Baldwin v. Railroad,* 25 N. W. Rep. 918; *Hough v. Railroad,* 100 U. S. 213; *Covey v. Railroad,* 86 Mo. 635; *Crane v. Railroad,* 87 Mo. 588; *Gutridge v. Railroad,* 94 Mo. 468; *Williams v. Railroad,* 119 Mo. 316.    (2) There being also a failure to prove who placed the grain door where plaintiff stepped upon it and no sufficient evidence on which to submit to the jury that question the court should have directed a verdict for defendant. *Latch v. Railroad,* 27 L. J. Exch. 155; *Jones v. Railroad,* 45 Up. Can. (Q. B.) 193; Patterson's Railway Accident Law, p. 38; *McGowan v. Railroad,* 61 Mo. 528; *Blessing v. Railroad,* 77 Mo. 410; *Murray v. Railroad,* 98 Mo. 573; *Perkins v. Railroad,* 103 Mo. 52; *Orth v. Railroad,* 50 N. W. Rep. (Minn.) 363; *Flynn v. Beebe,* 98 Mass. 575.    (3)   Even if it should be held that there was evidence tending to show that the door was put or left on the elevated walk by Hearne's men, who transferred grain there (which we deny), yet that did not tend to establish defendant's liability, because they were servants of an independent contractor, who alone was responsible for their acts, if negligent. *Parke v. Board,* 30 N. E. Rep. (Ind.) 147; *The Clarita,* 23 Wall. 1, 12; *Pawlet v. Railroad,* 28 Vt. 297; *Reed v.*

*Alleghany*, 79 Pa. St. 300; *Cuff v. Railroad*, 35 N. J. Law 1; *Waters v. Lumber Co.*, 20 S. E. Rep. (N. Car.) 719; 14 Am. and Eng. Encyclopedia of Law, 830, and cases cited. *Long v. Moon*, 107 Mo. 334; *Morgan v. Bowman*, 22 Mo. 538; *Hilsdorf v. St. Louis*, 45 Mo. 94; *Dillon v. Hunt*, 82 Mo. 150; *Blumb v. Kansas City*, 84 Mo. 112; *Lancaster v. Ins. Co.*, 92 Mo. 460. (4) The court erred in giving plaintiff's instruction number 1, and in refusing defendant's instructions number 4, 5, 6, 7, 8, 9, 12 and 13.

*E. P. Gates, Wm. H. Wallace* and *T. B. Wallace* for respondent.

(1) There was evidence upon which the jury could find that Hearne or his men left the grain door upon the elevated track: the facts and circumstances afforded a basis for such inference. *Lancaster v. Ins. Co.*, 62 Mo. 121; *Soeder v. Railroad*, 100 Mo. 673; *Kelly v. Railroad*, 70 Mo. 604; *Jantzen v. Railroad*, 83 Mo. 171; *Britton v. Railroad*, 120 Mo. 437. (2) It is doubtful if Hearne can be regarded as occupying the position of a person exercising an independent employment. But the general rule that one who engages an independent contractor is not responsible for the consequences of the negligence of the contractor in the performance of the work contracted to be done is subject to several exceptions. One of these exceptions is when the person for whom the work is done owes a duty to the public or an individual, and the negligence of the contractor constitutes a breach of this duty. Wood on Railroads [Ed. 1894], p. 1161, sec. 286. *Pickard v. Smith*, 10 C. B. N. S. 470; *Long v. Moon*, 107 Mo. 334; *Railroad v. Meadow*, 50 Tex. 77; *Lowell v. Railroad*, 23 Pick. 24; *Mayor v. O'Donnell*, 53 Md. 110; *Russell v. Columbia*, 74 Mo. 480; *Smith v. St. Joseph*, 42 Mo. App. 394;

*Taubman v. Lexington*, 25 Mo. App. 218; *Haniford v. Kansas City*, 103 Mo. 172; *Woodman v. Railroad*, 149 Mass. 335. (3) The duty which the master owes to the servant to provide and maintain a reasonably safe place in which to perform the service can not be delegated to an agent or an independent contractor so as to relieve the master from liability for an injury occasioned by its neglect. This is a duty which can only be discharged by the performance of it. The testimony was that Hearne had charge of this incline. *Trainor v. Railroad*, 137 Pa. St. 148; *Lewis v. Seifert*, 116 Pa. St. 647; *Kuhn v. Railroad*, 77 Hun, 389; *Kimmer v. Weber*, 76 Hun, 482; *Sanborn v. Flume Co.*, 70 Cal. 261. (4) The fact that the work which Hearne was employed to perform was a part of the regular business of the railroad company, conducted under the powers and franchises given to it by the state furnishes an additional reason why it can not escape liability by virtue of the contract with Hearne. *Speed v. Railroad*, 71 Mo. 309; *McWilliams v. Detroit Mill Co.*, 31 Mich. 274; *Harmon v. Railroad*, 28 S. C. 401; *Grand Tower Co. v. Ullman*, 89 Ill. 244; *Rickets v. Railroad*, 33 W. Va. 433; *Railroad v. Culbertson*, 72 Tex. 375; *Railroad v. Mayes*, 49 Ga. 355; *Railroad v. Whipple*, 22 Ill. 105; *Railroad v. Conroy*, 39 Ill. App. 351. (5) The railroad company being responsible for the acts of Hearne and his men, no notice of the existence of the obstruction was required. In contemplation of law the defendant itself placed the obstruction on the elevated structure. *Russell v. Columbia*, 74 Mo. 480; *Haniford v. Kansas City*, 103 Mo. 172; *Davenport v. Hannibal*, 108 Mo. 471. (6) If Hearne was in the position of an independent contractor, no question growing out of the relation of fellow servants arises. If a servant, he was, according to the testimony of all the witnesses, in a different department of the service, and he and his men were not

fellow servants with the plaintiff. *Sullivan v. Railroad*, 97 Mo. 113. (7) The court did not err in its rulings or the instructions.

GANTT, P. J.—This is an action for personal injuries sustained by the plaintiff while in defendant's employ as foreman of a switching crew in its yards at Kansas City, Missouri.

The petition alleged plaintiff was hurt by the negligence of the defendant in two respects: *First*, it required him to work in a dangerous place, to wit, on a certain inclined track; and, *second*, "by carelessly permitting a grain door from a car to be left lying on said elevated incline, on which he stepped in the dark and was thereby thrown to the ground and his leg broken."

The first charge of negligence was withdrawn from the jury by the court, and, as plaintiff is not appealing, will require but little consideration. The answer was a general denial and contributory negligence. The following facts appeared in evidence:

On February 10, 1891, plaintiff was employed by defendant as foreman of a switching crew which worked in its yards at night. He was thirty-six years old, an experienced switchman, and had been in railroad service of various kinds for eighteen years and had worked for many years in these same yards. Plaintiff was hurt by stepping upon what is called a grain door, which had been left or placed by someone upon an elevated track belonging to defendant, and was thereby thrown to the ground and his leg broken. This elevated track was used for transferring grain from one train to another.

It appeared that when grain consigned to points beyond Kansas City and was delivered to the defendant company at that place in cars that were in bad order, so that it was not safe to send them forward, or in cars

SIDE ELEVATION TRACKS No. 40 AND 41 (ELEVATED) K.C.F.S. & M.R.R.
KANSAS CITY YARD. Scale 1/16" to 1'.

— EARTH EMBANKMENT 601 LONG — · — · — INCLINE TRESTLE, EXPANSION TWELVE FOOT SPANS 230 FEET LONG — · · · — LEVEL TRESTLE, FIFTY PANELS FIFTEEN FOOT SPANS 600 FEET LONG —

CROSS SECTION TRACKS No. 40 AND 41 (ELEVATED).
Scale 1/2" to 1'.
Nov. 1894.

Chicago & Alton R.R. TRACK

Nº 3. Taken from end of walk (with cars on lower track)

Nº 4 Side view of elevated track

belonging to companies which did not allow them to go further south than Kansas City, it was necessary to transfer the grain into other cars that were in good order and would be allowed by the companies owning them to carry the grain to destination. To facilitate this transfer, the elevated track was constructed; the print and photographs filed as exhibits herewith give its appearance and how it was constructed. It rose gradually from the level of defendant's yards, running therefrom northwardly, first on an earth embankment ninety feet long, and then on trestle work two hundred and four feet, which brought it to a level of about six feet above the ground on the easterly side; it then ran at this elevation on a trestle, a distance of six hundred feet, where at its north end it stopped abruptly with a post or rail to prevent cars running off. Thus it will be seen, cars left upon the elevated track were six feet above the cars placed on the track located on the surface of the ground just east of the elevated track and marked on the print in evidence, track number 40

The practice was to shove upon this elevated track cars loaded with grain, which were to be transferred, and leave them upon the level portion thereof; then empty cars, into which the grain was to be put, were run in on track number 40, and the grain was transferred by running a kind of a trough or chute from the door of the upper car into the door of the opposite lower car, making an angle of about forty-five degrees; then upon opening the door of the loaded car most of the grain would run into the lower car and the rest of it was easily shoveled from the ends of the loaded car into the chute. In the loading and unloading of bulk grain there was sometimes used what are called in the testimony "grain doors," by which is meant two or three boards fastened together with cleats or in some similar way, made to be placed inside of the regular

door of the car ,(which is not always tight enough
to hold in grain, and which, sliding on wheels at the
top as it is opened, lets all the grain run out) for the
purpose of holding the grain in, when the outside door
is opened    These grain doors only come up far enough
to reach above the top of the grain in the car and did
not cover the whole door opening.

This work of transferring grain was done in the
daytime and it was the practice to pull the cars that
had been emptied off this elevated track during the
night, different crews doing the work (plaintiff's crew
was not there the night before he was hurt), and to put
in their place other loaded cars from which the grain .
was to be transferred the next day.    It often became
necessary, in transferring the grain, for the men who
did this work to separate the cars, either the loaded or
the empty ones, and move them a few inches in order
to bring the doors of the cars on the upper and lower
track, from and to which the grain was to be trans-
ferred, opposite each other; when this was done the
cars on the upper track which had been so moved had
to be coupled together by the switching crew designated
to pull them off.    It was while coupling these empty
cars together, preparatory to pulling them off the ele-
vated track, that the plaintiff fell from the walk running
alongside this track.

This elevated track was, as has been stated, built
on a trestle, there being two rows of piles driven in the
ground lengthwise of the track and directly under the
rails thereof, and heavy short stringers placed at right
angles to the track across those piles; other long
stringers were placed parallel with and directly under
the rails and across the stringers first referred to; long
ties were then placed across these long stringers at
right angles to them and the rails laid on these ties.
At the easterly end of these ties, that is, on the side

toward the lower track, number 40, and resting upon the ties, was a walk made of two planks, each twelve inches wide and two inches thick, placed an inch apart and running parallel with the rails; the outside of this walk was six feet from the center of the track.    There was some slight difference in the testimony as to the elevation of the walk above the ground and as to its width; but since the charge of negligence in furnishing this kind of structure to work on was with drawn from the consideration of the jury by the court, these differences, perhaps, are of no consequence.

The testimony showed that tracks similar to the one described, and erected for the same or similar purposes, are common on railroads, and such tracks are also constructed for reaching coal shafts.

This work of transferring grain, to which reference has been made, was done by an independent contractor, one R. G. Hearne.    Defendant company had an agreement with him by which it paid him a certain price per car for transferring any freight from car to car that it might wish to have transferred, but the principal part of his work was the transferring grain made necessary by the reasons heretofore stated.    Hearne had complete control of the manner of doing the work, hired the men to do it, paid them, discharged them, and arranged for the details of the manner of doing the work.    The railroad company had nothing to do with the matter, except to pay Hearne the price agreed on per car for transferring the grain or other freight that it might be necessary to transfer from car to car.    It had nothing to say about the hiring, discharging or paying of any of Hearne's men, nor about the manner in which the work was done.

Plaintiff knew all about this elevated track; had often worked upon it, and neither he or anyone else had ever been hurt on it.    He was directed by the yard-

master to remove the twenty-four empty cars that were then standing upon the elevated track. He had under him in his crew an engineer and fireman and two switchmen named respectively Wren and Stack. He placed Wren on top of the cars near the engine to give signals to the engineer, and, with Stack, coupled up the cars as they were moved back along the elevated track by the engine, signals being given from time to time by Stack or the plaintiff to Wren who repeated them to the engineer. They had coupled eighteen or twenty cars, and were nearing the north end of the elevated track, and about four cars therefrom, having been walking along the sidewalk referred to, when Burnes went in between two cars and walked along on the ties in front of a moving car; as he came out, he stepped on part of a grain door, which was lying on the walk (it was twelve or fifteen inches wide and about the length of the original door), and it toppled over, and he fell to the ground below and his leg was broken by the fall. He had never seen a grain door on the walk before when he was there at work, and he had been there two or three nights previously, as well as often before. On this night there were no cars on the lower track, except three opposite the south end of the inclined portion of the elevated track; there were no cars on the lower track opposite the eighteen or twenty which he had coupled on the upper track. It is undisputed that this piece of grain door was what caused him to fall. Stack, who was working ahead of Burnes, coupling cars, saw it on the walk and stepped over it. Burnes as well as Stack had a lantern. Burnes, as foreman, took note of the numbers of cars in a book as he went along and marked them in chalk to show to what company they were to be delivered.

Plaintiff recovered a judgment for $3,600, and defendant appeals,

I.   This action grows out of the relation of master and servant.   The law requires of the master that he furnish to his servant a reasonably safe place to work. The trial court very properly held that, upon the case made, the master was guilty of no negligence in the construction of the elevated track from which plaintiff fell. It was securely built and was suitable for the purpose for which it was erected.   No injury resulted to plaintiff from its original construction and, if it had, no action would have accrued to plaintiff who was fully acquainted with the place and had worked upon it for several years.   Having voluntarily elected to work on that track, knowing all about it, he assumed the usual and ordinary risks incident thereto.

The question here is the liability of the master for the temporary obstruction placed on the walk-way provided for the employees whose duties required them to walk over it.   The essential point upon which counsel differ is that of notice to the defendant of this obstruction.   Counsel for plaintiff contends that the defendant is responsible for the acts of the contractor Hearne and his men and no notice of the existence of the obstruction was required; that in contemplation of the law defendant itself placed the obstruction on the elevated track, whereas defendant asserts the law to be that while the master is bound to furnish a reasonably safe place for his workmen, yet if he has done this in the first instance he is not liable for subsequently accruing defects, unless he has notice thereof, or by the exercise of ordinary care could have discovered the defect, and the mere fact that an accident happened will not of itself show want of care.   The simple question, then, is whether sufficient was shown to authorize the court to submit the case to the jury.

Of course, if plaintiff's assumption is right, then no notice whatever was necessary; but we can not agree

that this is good law when applied to the facts under consideration. The learned counsel cites as supporting his view: *Russell v. Columbia*, 74 Mo. 480; *Haniford v. Kansas City*, 103 Mo. 172, and *Davenport v. Hannibal*, 108 Mo. 471.

The first two of these cases grew out of excavations made by gas and street railway companies in the public streets by the express authority and permission of the city, and the character of the work notified the city of the danger attending it, and demanded that it should exercise proper care to protect those traveling upon the streets in ignorance of the ditches and excavations permitted by it, and it could not escape liability by delegating this duty to others; and, in the *Davenport case*, the injury occurred in the night at a defective crossing which had long existed, for want of a light which the city was required to furnish and which was not burning at the time by reason of the negligence of its own servant appointed to that work.

Those cases are not applicable here. In this case, there is no evidence of a defective structure, nor was there any element in the defendant's contract with Hearne that necessarily, or even probably, rendered the work to be done by him and his servants for the company dangerous to its other employees. In those cases the dangerous condition of the street was produced by the express sanction of the cities; in this case there is not a word of evidence tending to show that defendant or any officer or servant, whose duty it was to know, had any knowledge of the obstruction on the walk or had reason to anticipate that Hearne's contract would lead to an obstruction of the elevated way and render it dangerous.

The rule in this state in this class of cases requires the servant to show the unsafe place or defective machinery, and that the master knew of the unsafe

condition, or that the exercise of ordinary care on the master's part would have discovered the defect. Beginning with the well considered case of *Gibson v. Railroad*, 46 Mo. 163, this has been the uniform ruling in this state. *Elliott v. Railroad*, 67 Mo. 272; *Crane v. Railroad*, 87 Mo. 588; *Gutridge v. Railroad*, 94 Mo. 468; *Bowen v. Railroad*, 95 Mo. 268. What would amount to ordinary care must depend upon the facts of each case.

It devolves upon the plaintiff to show notice to the defendant of the defect, or the existence of such a state of facts as would justify the jury in finding that by the exercise of ordinary care defendant would have learned of the defect or dangerous condition. The defendant can not avoid its liability by shutting its eyes to its obligations to maintain a reasonably safe place; but this rule does not exact such a constant and rigid inspection that no defect would escape attention; but it does require reasonable inspection, care and oversight proportionate to the danger of its undertaking and business. *Williams v. Railroad*, 119 Mo. 316.

There is not a scintilla of evidence as to when this grain door was left or placed on this elevated track, until Stack, one of plaintiff's own crew, saw it and stepped over it, a moment before plaintiff stepped on it and fell. There is no actual notice to any servant of the defendant, whose duty it was to lock after that walk, that this door was on it, nor is there a particle of evidence tending to show negligence in not discovering it sooner. Nor was it shown by whom it was placed there. It is true, plaintiff urges that the inference is plain that Hearne or his men left it there, because it was shown they had sole charge of the transfer of the grain. In other words, he insists that a presumption arises that Hearne's men left it there because of their exclusive use of the cars in loading.

But the proof is, that, while Hearne had charge of transferring the grain from one train to another, it was no part of his business to couple the cars and remove them from the elevated track when they were emptied. That work was done by plaintiff and his crew, and by other switch crews in those yards engaged in the same character of work that plaintiff and his crew were doing. So that it is not true as a basis of this presumption that Hearne had exclusive use of the elevated way, although he did have of transferring the grain.

Moreover, the photographs, as well as the oral testimony, disclose that this track was only one of many in a great terminal yard. Immediately adjoining it was a track of the Chicago & Alton Railroad. It was shown that no one had ever seen a grain door on this walk before that night. This door was not shown to have any mark indicating it belonged to Hearne or the defendant company. Had it been shown that Hearne and his men were in the habit of leaving these doors constantly on this way, and that it had marks indicating it belonged to him or the defendant company there might have been some ground for the presumption, but when it was shown that this was an open railroad track in a great railroad yard, easily accessible to other employees of defendant, and the servants of other railroads, we think it is going too far to indulge the presumption that Hearne's men negligently left it there.

We readily agree that where a thing is done upon the premises of an individual or a company in the ordinary course of business, it may fairly be presumed that it was done by an agent or employee of the individual or company for whose benefit it is done. For example, if I step into a mercantile establishment and find one occupying apparently the position of clerk or salesman, I may safely deal with him in absence of knowledge to the contrary, and the proprietor will be

bound thereby. So, also, it may be safely asserted that, if the grain loaded into these cars, of which Hearne had the exclusive control, had been lost by leakage or the falling out of one of these temporary doors, the presumption would have been that some of his employees had failed to exercise due care; but there is no such necessary or reasonable connection between their employment in loading the cars and the negligent act of leaving the loose door on the walk, when it appears from plaintiff's own case that switching crews were constantly going on the same elevated way to couple and remove the empty cars and placing and uncoupling the loaded cars, and that the place was an open railroad track in a yard with other tracks, not only of defendant but other companies, and especially when the evidence affirmatively shows that Hearne's men had never left a door on that way before and there was nothing in their employment which rendered it either necessary or usual to do such a thing.

In the absence of an exclusive control of the track and incline for all purposes, there is no sound reason why the act of leaving that door may not be attributed just as well to some other employee or stranger as to Hearne's men. It may have been done by Hearne's men or it may not—it is a mere guess, a mere conjecture—and no court can afford to base its judgments upon such an uncertain basis. Excluding this inference there is no evidence whatever showing that it was the act of any person for whose misconduct or negligence defendant was liable and it necessarily follows that plaintiff failed to establish the essential fact which could have justified the court in submitting the question of defendant's negligence to a jury, or a jury in finding defendant guilty of negligence. Upon such a showing the court should have sustained a demurrer to the evidence.

It follows also, from what we have said, that the circuit court erred in giving plaintiff's first instruction, in this, that it permitted plaintiff to recover without requiring him to show notice to defendant of the obstruction on the elevated way, or that, by the exercise of ordinary care, it would have had notice thereof; and, secondly, in directing the jury that they might find the obstruction was placed on the way by Hearne's men, of which there was no evidence, and because, if there had been, it was error to thus single out this particular agent of defendant and direct the jury's attention to him and his employees.

II.    Having reached the conclusion that there was no evidence that Hearne or his men placed the obstruction on the elevated way, it seems to us to be almost premature to pass upon the question of the defendant's liability for their acts.    That Hearne was an independent contractor seems very clear, but it does not at all follow that defendant might not be liable for the negligence of Hearne's men.    On the contrary it was the duty of defendant to construct and maintain in a reasonably safe condition its tracks and ways for the use of its switchmen, and the law will not permit it to delegate to others its duties and thereby escape all liability therefor.    The duty of keeping its road, track and yards in a reasonably safe condition is a personal duty which the master owes the servant and it can not delegate this duty to any servant, high or low, nor can it avoid liability by letting out a part of its duties as a common carrier to independent contractors.

While for many purposes this relation of independent contractor will be recognized, it can not be sustained to shield the master from those positive personal obligations cast upon him by his relation to his servant. *Schaub v. Railroad*, 106 Mo. 74; *Lewis v. Railroad*, 59 Mo. 495; *Siela v. Railroad*, 82 Mo. 435.

So that, without further elaboration, it is sufficient to say that if it had appeared that the grain door had been left or placed on the walk on the elevated way by Hearne's men and this had become known to defendant or its yard master or other servant whose duty it was to look after the safety of its tracks and ways, or had been there long enough that a reasonable inspection or supervision would have detected and removed it, then defendant should be held liable notwithstanding that as between defendant and Hearne, Hearne was an independent contractor.

For these reasons the judgment is reversed.

BURGESS and SHERWOOD, JJ., concur.