LOUIS LORTON, Respondent, v. THE WABASH
RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, November 6, 1911.

MASTER AND SERVANT: Negligence. An engine was left stand-
ing on a spur track, by the engineer, and turned over to
plaintiff as caretaker. The levers and throttle were left in
proper position to keep the engine stationary. Several hours
afterwards while plaintiff was underneath cleaning the engine
it suddenly started forward and injured him. Plaintiff did
nothing to cause it to move, nor was it caused to move by any
human agency. The throttle, from long usage, had become
so worn that it permitted steam to escape into the cylinders,
and thus move the engine. This condition of the throttle could
have been discovered, by inspection, in ample time before the
accident to permit repairs. *Held*, that it cannot be said as a
matter of law that plaintiff's version of his injury is opposed
to physical facts or laws or is so unreasonable as to overtax
creduity.

Appeal from Callaway Circuit Court.—*Hon. N. W.
Thurmond*, Judge.

AFFIRMED, CONDITIONALLY.

*J. L. Minnis* and *Robertson & Robertson* for appel-
lant.

The petition does not state a cause of action. Wood
on Master and Servant, sec. 358; Current v. Railroad,
86 Mo. 62; Mueller v. Shoe Co., 109 Mo. App. 506;
Crane v. Railroad, 87 Mo. 588; Johnson v. Railroad,
96 Mo. 340; Fisher v. Lead Co., 156 Mo. 479; Duerst v.
Stamping Co., 163 Mo. 607; Munchow v. Munchow, 96
Mo. App. 553. The court erred in overruling defend-
ant's motion to elect between different causes of ac-
tion. Wills v. Railroad, 133 Mo. App. 625; Kendrick
v. Railroad, 81 Mo. 521; McHugh v. Transit Co., 190
Mo. 85, 1. c. 92-94. The court erred in refusing to in-

struct a verdict for the defendant at the close of the evidence for the plaintiff, and in refusing to instruct a verdict for the defendant at the close of all of the evidence. Wigmore on Ev., sec. 2509; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Orcutt v. Century Bldg Co., supra; Klebe v. Distilling Co., 207 Mo. 480, l. c. 489-491; Bowen v. Railroad, 95 Mo. 268; Oglesby v. Railroad, 177 Mo. 272; Fuchs v. St. Louis, 167 Mo. 620; Patton v. Railroad, 179 U. S. 658; Railroad v. Barrett, 166 U. S. 617; McGrath v. Railroad, 197 Mo. 104; Beebe v. Transit Co., 206 Mo. 419; Deckerd v. Railroad, 111 Mo. App. 117, l. c. 123. The court erred in permitting the hypothetical question (Abs. 65) as to the probable duration of plaintiff's injury to be asked Dr. Toalson and answered by him. Root v. Railroad, 195 Mo. 348, l. c. 377; Russ v. Railroad, 112 Mo. 45; DeMaet v. Storage, etc., Co., 121 Mo. App. 92, l. c. 105; Smart v. Kansas City, 91 Mo. App. 586. The court erred in admitting the plaintiff's exhibit No. 1 in evidence. 22 Am. Ency. of Law (2 Ed.), 775; Geer v. Lumber Co., 134 Mo. 85; Baustain v. Young, 152 Mo. 317; Threlkeld v. Railroad, 68 Mo. App. 127; Underhill on Evidence, sec. 142. The verdict for $3,500 is excessive. Railroad v. Ackley, 87 Ky. 278; 1 Joyce on Damages, sec. 39, 100-101, pp. 240-262; Railroad v. Banks, 33 S. W. 627.

*E. Rosenberger & Son* and *Barclay, Fauntleroy & Cullen* for respondent.

The petition is sufficient. An allegation that the defendant negligently furnished an appliance or instrumentality, which was defective and unsafe, is equivalent to a statement that the master knew, or might have known, by the use of ordinary care, of the dangerous and defective character of the appliance. Clippard v. Transit Co., 202 Mo. 432-440; Crane v. Railroad, 87 Mo. l. c. 594; Johnson v. Railroad, 96 Mo. l.

c. 345; Young v. Shickle H. & H. Co., 103 Mo. 328; Fasbinder v. Railroad, 126 Mo. App. l. c. 570; Bellamy v. Whitsell, 123 Mo. App. l. c. 615; Hall v. Railroad, 74 Mo. l. c. 302. That negligence may be inferred from circumstances there is no doubt in reason or upon authority, and likewise the due care of the person injured may be proven by circumstances. Lynch v. Railroad, 108 Mo. 1; 3 Ency. Ev. 103. When the plaintiff's testimony is sufficient to make a prima facie case, the issue is for the jury, and not for the court; and this is true although the testimony in favor of the defendant is all one way. Bryan v. Wear, 4 Mo. 106; Wolff v. Campbell, 110 Mo. 114, l. c. 120; Gordon v. Burris, 141 Mo. 602; Seehorn v. Bank, 148 Mo. 256; Ford v. Dyer, 148 Mo. 528. This rule is especially applicable where defendant's testimony, as in this case, is in the nature of expert testimony. Johnson v. Kahn, 97 Mo. App. 629; Casgrove v. Johnson, 134 Mo. 419; Copeland v. Wabash, 175 Mo. 650.

JOHNSON, J.—This is an action by a servant against his master to recover damages for personal injuries alleged to have been caused by negligence of the master. In effect the answer is a general traverse. [Ramp v. Metropolitan Street Ry. Co., 133 Mo. App. 700.] A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $3500, and the cause is here on the appeal of defendant.

The injury occurred about two o'clock a. m. November 18, 1907, in defendant's yards at Montgomery City where plaintiff was employed as engine watchman and cleaner. A compound mogul freight engine came into the yards from a trip late in the afternoon of November 17th and at 6:30 p. m. was run on a spur track by the engineer and turned over to plaintiff as caretaker during the night. Plaintiff's duties towards such engines required him to "keep

159 App.—36

water in them, keep fire in them, wipe the jackets, fill the lubricators, fill the hand oilers and change the tools from one engine to the other." Before resigning control of the engine it was the duty of the engineer to leave "the reverse lever on center, close the throttle tight, and see that they were in a stationary condition."

An engine left in such condition, if in good order, will remain stationary and cannot move without the interference of human agency. The evidence of plaintiff tends to show that the engine in question was left by the engineer in the condition just described and there is no suggestion in any of the evidence that the engineer was remiss in the performance of his duties. Plaintiff states he did nothing to cause the engine to move and that it did not move from the place where the engineer "spotted" it until two o'clock in the morning when suddenly, and without warning, it started forward slowly at a time when plaintiff was under the engine where he had placed himself for the purpose of taking out ashes and cinders. While extricating himself from his highly perilous position plaintiff became caught in some way and in jerking loose, one of his ankles was severely injured. Immediately after his escape plaintiff climbed into the cab and moved the reverse lever in a way to stop the engine, then descended to the ground and blocked the wheels to prevent a recurrence of a movement of the engine. After this, he re-entered the cab to ascertain the cause of his mishap and found from closing the throttle and opening the cylinder cocks that steam was escaping into the steam chest—a result that could be achieved by no other cause than that of a defective throttle. It appears from the evidence of plaintiff that a throttle, by long usage, may become worn at the point to an extent to preclude it from entirely shutting off steam from the steam chest and that such defective condition

may be discovered in the way it was discovered by plaintiff after his injury.

Plaintiff states that it was no part of his duties to make such inspection but that his duty compelled him to allow the motive appliances to remain in the state the engineer had left them. There is evidence in the record to the effect that before a leaky throttle will become so seriously defective as to allow, when closed, the escape of sufficient steam into the chest to move the engine, there would be a period of six months wherein the defect would be discoverable by ordinary inspection. Plaintiff accounts for the fact that the engine remained stationary for over seven hours by stating that shortly before the accident he stoked the fire and raised the steam to a higher presure than it had even at the time the engine was "spotted." His theory is that the high pressure forced enough steam through the aperture caused by the defective throttle to move the engine and his evidence tends to show that but for the defect, no obtainable amount of steam pressure would have produced such result. Some of defendant's witnesses admit that an engine may be caused to "creep" by a defective throttle, but all of them say that with the throttle and cylinder cocks closed, an engine would not move after it had been stationary ten minutes on account of the impediment to the passage of vagrant steam into the chest offered by accumulated water from condensed steam.

We cannot say as a matter of law that plaintiff's version of his injury is opposed to physical facts or laws, or is so unreasonable as to overtax credulity. We say his evidence, taken as a whole, reasonably justifies the inference that the motion of the engine was not caused by human agency but was caused by the escape of steam into the steam chest through a worn and defective throttle and that the defect had been discoverable to reasonably careful inspection for, approximately, six months before the injury.

The petition alleges "that said engine was placed on said track not by him, but by other servants and agents of the defendant, and it was the duty of the defendant and its servants and agents to inspect said engine and to see that it was in such condition that the machinery thereof would not start without the intervention of some human agency; but plaintiff says that said defendant, its agents and servants negligently failed to discharge this duty, and negligently placed said engine on said track when it was in such a dangerous and defective condition and was so out of repair and it was liable to start and attempt to run without the intervention of human agency, and so carelessly and negligently left the appliances and means used on such engine for stopping and starting the same in such position and condition that such engine was liable to move forward without the intervention of any human agency and said engine moved as aforesaid as a result of the negligence of the defendant aforesaid, and when it so moved it placed plaintiff who was thereunder in imminent peril of life and limb, and he attempted to extricate himself from his perilous position."

Defendant demurred to the petition on the ground that no cause of action was stated but it is so clear the court did not err in overruling the demurrer that we shall not discuss the point though defendant still urges it in brief and argument. And for the same reason we shall not consume time and space in the discussion of the further points that the court erred in overruling defendant's motions to elect and that the petition be made more definite and certain and in allowing plaintiff to sue as a poor person.

We pass to the consideration of the questions presented by the demurrer to the evidence which defendant insists should have been given.

Counsel for defendant argue (and we think convincingly) that this is not a case for the application of

the rule of *res ipsa loquitur* and the mere fact that the engine moved does not constitute *prima facie* proof of negligence. The gravaman of the cause of action disclosed by the evidence of plaintiff is negligence of defendant in failing to exercise reasonable care to provide its servant a reasonably safe place in which to work, i. e., with a reasonably safe engine. The existence of such negligence as the proximate cause of the injury, while not necessarily established by proof of. the fact that the engine moved of its own accord, appears as a reasonable inference from the facts that the engine moved, that it could so move from but one of two causes, viz., human agency or a defective throttle; that the first mentioned of such causes was nonexistent; that a test made immediately after the event disclosed the presence of the remaining possible cause, and that the origin of such cause had been in existence long enough for the defendant, by the exercise of reasonable care, to have discovered and repaired it.

To hold that such facts and circumstances do not support a reasonable inference of negligence would be to say that the fact of negligence must be proved by direct and positive evidence and cannot be established by circumstantial evidence. Plaintiff's burden of proof required him to produce evidence which, if believed by the triers of fact, would admit of no other reasonable conclusion than that of negligence on the part of his employer which became the proximate cause of the injury. Plaintiff has done this and we proceed to the question of whether or not he has satisfied the rule that where the petition alleges a specific act of negligence a recovery by the plaintiff will be allowed on no other act though such other act be never so strongly established by proof. Defendant insists that the allegations of negligence in the petition comprise two specific acts, first, failure to inspect and, second, negligence of the engineer in failing to turn the engine over to plaintiff with its motive appliances set to hold

it stationary. Concededly the last averment is entirely unsupported by proof and, therefore, is out of the case, and defendant argues that the first charge of failure to inspect is unsupported, since the proof left the triers of fact completely in the dark as to whether failure to inspect or the omission to repair the defect after discovery was the proximate cause of the injury.

We have shown that the inference presented by the evidence of plaintiff is that the injury was the direct result of general negligence—of the omission of the master to exercise reasonable care to provide its servant a reasonably safe place in which to work—and an analysis of such negligence in the light of plaintiff's evidence shows that it could be composed of but two ingredients, two wrongful acts of different degrees of culpability; the first being mere negligence in failing to inspect a defective machine, and the second the omission to repair a defect so serious and dangerous after its discovery. The facts and circumstances we have mentioned portray the latter act not as a mere negligent breach of the master's duty, but as a wanton and reckless disregard of the safety of the servant. The inference is not reasonable, nor should it be indulged, that, with knowledge of the defect in ample time to have repaired it, defendant, knowing that its servant, ignorant of the defect, would place himself in range of its dangerous proclivities, nevertheless, continued the dangerous machine in use and sent it out to maim and kill. In our view of the case the allegation of negligence was specific but the only humane and reasonable view of defendant's conduct afforded by the hypothesis of plaintiff's evidence is that defendant negligently injured its servant by failing to inspect the engine and did not wantonly or recklessly injure him by knowingly sending him into a place of certain danger. The inference of negligence in failing to inspect is sustained by the evidence of plaintiff and is the only reasonable inference that may be drawn

Lorton v. Railroad.

from that evidence. The demurrer to the evidence was properly overruled and we find the instructions given by the court to be free from prejudicial error.

We find the verdict excessive. Plaintiff was forty-eight years old at the time of the injury and the fact is that he suffered no other injury of consequence than a sprained ankle. His expert witnesses say the injury is permanent and that he always will have a weak ankle. This may be so but other undisputed facts and circumstances in evidence convince us that plaintiff magnifies his injury and has succeeded in inducing the jury to overstep the limits of the wide field the law accords them for the exercise of their judgment in the assessment of damages for personal injuries. Plaintiff continued in the employment of defendant for five months after his injury without complaint and without the loss of a single day's time. He explains this by saying that, for some time, his sons helped him do his work, but he reported for duty every day and used the injured member well enough to hold his job. After leaving the service of defendant he worked as a carpenter and earned full wages. He made no claim in his instructions on the measure of damages for lost earnings nor for injury to his earning capacity. We recall the saying that a bad sprain is worse than a broken bone but an assessment of $3500 for the pain and suffering caused by a sprain of no worse consequences than those suffered by plaintiff is unreasonable. We think a judgment in excess of $2000 should not be allowed to stand and, accordingly, we affirm the judgment on condition that within ten days a remittitur of $1500 be entered by plaintiff.

All concur.