ALICE C. MULLERY, Respondent, v. MISSOURI & KANSAS TELEPHONE CO., Appellant.

Kansas City Court of Appeals, May 18, 1914.

1. **NEGLIGENCE: Master and Servant: Safe Place to Work: Rest Room for Servants.** Where a master provided a rest room in which the telephone operators were requird to go at stated periods during the day and rest as a part of their duties, an operator, who, when the rest period arrived, had left the board and gone to the rest room as required was still in the line of her duties and was where she was required to be in the regular performance of her work. In such case the duty rested upon the defendant master to see that the rest room was maintained in a reasonably safe condition.

2. ———: ———: **Pleading: Evidence.** Where plaintiff's petition alleges, as the specific and only cause of the injury, the negligent construction of certain metal booths or lockers on a balcony, the evidence must not only show negligent construction but also that such negligent construction was the direct

and proximate cause of the fall. And where there is no evidence affirmatively showing or from which an inference can be drawn that it fell as a result of such construction, but the only permissible inference is that the proximate cause of the fall was the attempt to remove the lockers, there is a failure of proof as to the specific cause alleged being the proximate cause of the injury. The evidence must show, or at least be such as will support a reasonable inference that the act pleaded was the proximate cause.

3. ———: ———: **Duty to Maintain a Reasonably Safe Place Nondelegable: Rule as to Independent Contractor.** The master cannot delegate to an independent contractor the duty to use reasonable care to furnish his servants with a reasonably safe place in which to work. Where one is charged with a duty arising from a legal obligation which he cannot devolve upon another, the rule as to independent contractor does not apply.

4. **PRACTICE: Amendment: Departure.** Where the cause of action throughout is the defendant's failure to maintain a reasonably safe place for the servant in which to work, an amendment of the petition changing merely the specification of the act or acts by which the master failed in the performance of that duty, does not constitute a departure.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer*, Judge.

REVERSED AND REMANDED.

*C. C. Crow* and *D. E. Palmer* for appellant.

The court clearly erred in refusing to peremptorily instruct the jury to find for defendant. Long v. Moon, 107 Mo. 334; Kipp v. Oyster, 133 Mo. App. 711; Fink v. Mo. Furance Co., 82 Mo. 276; Gayle v. Mo. Car & Foundry Co., 177 Mo. 427. The rule *res ipsa loquitur* does not apply because the plaintiff pleaded specific acts of negligence. Gibler v. Railroad, 148 Mo. 475; Black v. Railroad, 217 Mo. 672; McGrath v. Transit Co., 197 Mo. 97; Hayne v. Packing Co., 126 Mo. App. 93; Hamilton v. Railroad, 123 Mo. App. 619.

*Mytton & Parkinson* for respondent.

(1)   It is the duty of a master to furnish his servant a reasonably safe place in which to work, and this duty cannot be delegated.   Morton v. Dry Goods Co., 126 Mo. App. 377; Herdler v. Stove & Range Co., 136 Mo. 16; Burnes v. Railroad, 129 Mo. 56; Sackewitz v. Biscuit Co., 78 Mo. App. 144.   (2)  The duty of the master to furnish a reasonably safe place of work embraced the rest room where plaintiff was required to be when she was injured.   Jackson v. Butler, 249 Mo. 342; Strobel v. Mfg. Co., 148 Mo. App. 22.

TRIMBLE, J.—Plaintiff, in defendant's employ as a long distance telephone operator, was injured by the fall of a locker in the rest room provided for defendant's employees; and she brings this suit for damages sustained thereby.   She recovered judgment, and defendant has appealed.

The rest room in question, about 18 feet by 20 feet in size, was maintained by defendant in its telephone exchange building so that the lady telephone operators could have a place to rest and refresh themselves for a certain period in the forenoon and also for a like time in the afternoon of each day.   The operators were required to make use of these rest periods and to do so in the rest room.   Call bells were established therein so that at the expiration of the rest period the operators would be notified of that fact and recalled to their seats at the telephone board.   An operator, therefore, who, when the rest period arrived, had left the board and gone to the rest room to rest, as required, was still in the line of her duties and was where she was required to be in the regular performance of her work.   Hence the duty rested upon the defendant master to see that the rest room was maintained in an ordinarily safe condition.   [Jackson v. Butler, 249 Mo. 342.]

A balcony extended along the north side of this room from the west wall to within five to eight feet of the east wall. The balcony was about six feet from the the floor and about nine feet wide. On this balcony were two rows of metal lockers in which the operators put their wraps. One row stood with their backs against the north wall of the room along the north side of the balcony. The other row stood along the south edge of the balcony with their backs to the room and their faces to the north leaving a passway between the two rows along the balcony. At the west end a flight of steps led to the floor of the balcony. The rest room was entered by a door east of the east end of the balcony, so that one in entering the room passed under the balcony and emerged from under it going in a southerly direction.

Prior to the day of the accident, defendant had entered into a written contract with one, J. W. Lehr, to make certain alterations in its building including the removal of the balcony in the rest room. On the 10th day of January, 1912, two employees of Lehr were on the balcony preparing to remove the lockers from the balcony in order to take the balcony down. One of them, Williams, had taken an arm-load of wraps out of the lockers and had carried, or was engaged in carrying, said wraps to the west end of the balcony. The other man, Womach, was taking the doors off the east locker on the outer edge of said balcony. He had removed one and was either in the act of setting it down on the balcony or was taking off the other door when the locker fell outward into the room to the floor striking on one end and then toppling over against plaintiff, who had just come into the rest room to spend her rest period, causing an injury to her head and thereby affecting her nervous system, subjecting her to nervous attacks, impairing her health and rendering her incapable of working.

These lockers were of steel or metal each about five or six feet in height, eighteen inches in width and about the same in depth. They weighed from 300 to 500 pounds apiece. They stood up about five inches from the floor of the balcony on metal legs. Plaintiff's witnesses testified that the lockers standing on the outer edge of the balcony with their backs to the room were without any back legs, they having been cut off; that the lockers rested on their two front legs upon the balcony and extended up to the ceiling high enough for the back part of the top of the locker to rest against a beveled beam running east and west in the ceiling and extending about six inches down therefrom; that though there were screw holes in the feet of these two front legs, there were no screws in them. Defendant's evidence was to the effect that the locker had two back legs and that the front feet were screwed to the floor; and that the workmen engaged in removing the lockers had removed these screws.

Plaintiff's petition alleged facts which show that her cause of action is based on the master's failure to maintain said rest room in a reasonably safe condition for plaintiff's use as defendant's servant; and the particular act of negligence specified was the negligent construction or erection and maintenance of said locker upon said balcony without back legs thereunder and resting at the top against the ceiling beam and at the bottom upon the two front legs with no fastenings therein to prevent the said legs from slipping forward upon the balcony floor and thereby cause the top of the locker to come below the ceiling beam and thus allow the locker to fall outward and down upon any employees who might be resting in the room at the time.

The lockers stood upright and extended far enough above the beam to be held securely in place unless the legs were caused in some way to move forward on the balcony floor so as to bring the top of the locker below the beam. The evidence was undisputed that they had

stood firmly and securely in place ever since they had been put there, without slipping or instability of any kind, and had been in constant use for over a year. There is nothing in the entire record tending to show, or from which an inference can be drawn, that they would ever have fallen had they been left in the condition in which they were placed and had no attempt to remove them been made. After the locker fell, there were marks on the balcony floor showing where the front legs slipped forward to the north far enough to allow the top to come below the beam and fall outward. There is no evidence in the record showing affirmatively what caused the front legs to thus move forward. Williams, one of the two men on the balcony at the time, says nothing was done by them to cause them to so move. But he did not remove the door from the locker. He was carrying clothes to the west end of the balcony and had his back turned to the locker when it fell, and he turned around startled by the crash of the fall. Womach who was taking the doors off the locker at the time it fell, was asked if he in any way moved the locker so as to cause it to fall, and made this answer *"Not that I know of*; I was taking those doors off."

So that there is no evidence in the record expressly or affirmatively showing that the specified negligent construction and maintenance of the lockers were the proximate causes of the fall, nor is there express or positive evidence that its fall was *not* caused by the workman engaged in taking it down. In view of the undisputed fact that the lockers had stood, and had been used for a year, firmly and securely without slipping or instability of any kind, and in view of the further fact that, as a matter of mechanics and physical law, the front legs of a heavy upright object will not slip horizontally forward unless some force acting in that direction is exerted upon it, and in view of the still further fact that there is nothing to show affirmatively

that the negligent construction was the proximate cause of the fall, and in view of the still further additional fact that the locker did fall while a workman was engaged in changing its condition, the only permissible inference to be drawn is that the direct and immediate cause of the fall was something done to it in the process of the removal of the door and of taking the locker down. And in order to find that the negligent construction alone was the cause of the fall, the jury must run contrary to, and in spite of, this natural and reasonable inference that it fell as a direct and immediate cause of what was being done to it at the time of its fall. Now this cannot be done unless there is in the evidence facts from which the jury can find, or can draw the stronger inference, that it fell solely because of the negligent construction. So that although the jury, by its verdict, found that the negligent construction and not the act of the workman was the proximate cause of the fall, yet if there was no evidence upon which that finding can be predicated, or from which an inference to that effect can be drawn, such finding cannot stand. In such case, as the petition bases the cause of the fall upon the negligent construction alone, there is a failure of proof that the particular act of negligence specified was the direct and proximate cause of the injury. The inference to be drawn from the evidence is that so long as the lockers remained as installed, they were safe, but, on account of the method of their construction, the work of taking them down rendered it obviously necessary to observe precautions to prevent them falling during the progress of their removal. On account of the way they were constructed any attempt to remove them without steps being taken to prevent their fall was negligence and thereby the room was rendered dangerous and unsafe. The method of construction no doubt was the remote cause of the fall, but the proximate cause was the effort to remove the locker standing in that situation without taking

any precautions whatever to prevent its falling. At least such is the reasonable, natural and, therefore, only permissible inference to be drawn from the evidence. Even if the evidence be considered such that the locker may have fallen either from a negligent original construction or by reason of the preparations to remove it, still, if the evidence leaves it uncertain which of the two causes produced the fall, and the petition has specified only one of such possible causes, then there is a failure of proof, because it is incumbent upon plaintiff to make out her case not only by showing the particular act of negligence specified but also that the one specified was the direct and proximate cause of the injury. The evidence must be such as will reasonably show, or at least will support a reasonable inference, that the act pleaded was the proximate cause. This cannot be left to conjecture or arbitrary choice. [Trigg v. Ozark Land Co., 187 Mo. 227; Rogers v. Hammond Packing Co., 157 Mo. App. 49, l. c. 58; Plefka v. Knapp, 145 Mo. 316.] Where, as here, the petition charges a specific act of negligence the proof must not only show that such negligence existed but also that it was the proximate cause of the injury. [Kane v. Railroad, 251 Mo. 13, l. c. 47; McGrath v. Transit Co., 197 Mo. 97; Byerly v. Consolidated Light, Power and Ice Co., 130 Mo. App. 593; Harper v. St. Louis, etc., Terminal Co., 187 Mo. 575.] The petition charges negligence only in the construction of the lockers, and says nothing about negligence in preparation to remove them. Not only does the evidence fail to show that negligent construction was the proximate cause of the injury but the inference is that the proximate cause was the attempt to remove them. Where a specific act of negligence has been pleaded, the rule of *res ipsa loquitur* does not apply. [McGrath v. Transit Co., 197 Mo. 97; Black v. Metropolitan Street Ry. Co., 217 Mo. 672; Zachra v. American Mfg. Co., 139

S. W. 518; Lorton v. Wabash Railroad, 141 S. W. 478, l. c. 480.]

It does not follow, however, that the case should be reversed without being remanded. Defendant contends that Lehr, who had the contract to remove the balcony, was an independent contractor; that since the inference is that the attempt to remove the locker was the proximate cause of the fall and the negligence was in that attempt, defendant cannot be held liable because Lehr's servants were not the servants of defendant. Whether Lehr was an independent contractor or not, makes no difference, and, therefore, the trial court rightfully excluded the contract between defendant and Lehr. When the duty resting upon the master is primary and personal, it cannot be delegated to another. [Morton v. Barr Dry Goods Co., 126 Mo. App. 377.] Where one is charged with a duty arising from a legal obligation which he cannot devolve upon another, the rule as to independent contractor does not apply. [Long v. Moon, 107 Mo. 334, l. c. 340; Welch v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 480.] The master cannot delegate to an independent contractor the duty to use reasonable care to furnish his servants with a reasonably safe place to work. [Herdler v. Bucks Stove and Range Co., 136 Mo. 3, l. c. 16; Burnes v. Kansas City, etc., R. Co., 129 Mo. 41, l. c. 56.] In this case the defendant master owed the plaintiff servant the duty to maintain the rest room in a reasonably safe condition. By constructing the lockers in the way it did and then beginning their removal without any precautions whatever to prevent their falling while at the same time still maintaining the rest room as a place where plaintiff was required to go as a part of her duties, the master failed in its duty to the servant, and that duty is one which it cannot shift to the shoulders of another on the plea that such other is an independent contractor. Having erected the lockers in such way that when their removal was com-

menced the lockers were liable to fall the master is chargeable with notice that the room will be unsafe whenever that work is begun, and in continuing to maintain the room as a resting place while having the lockers removed with no precautions taken to prevent their fall, the master is clearly guilty of negligence without regard to whether the work of removing the lockers is committed to an independent contractor or not. The trouble with the plaintiff's case, as it now stands, is that she has specified one particular act of negligence while the only inference to be drawn from all the evidence is that the construction of the lockers alone did not constitute the negligence and was not the proximate cause of the injury but that another and different act of negligence did cause it and was its proximate cause. The case must, therefore, be remanded so that plaintiff may amend her petition in such manner as to support and come within the evidence. There is no merit in the contention that by such amendment there will be a departure. The cause of action is upon defendant's failure to maintain a reasonably safe place for the plaintiff servant. An amendment of the petition merely changes the specification of the act or acts by which the master failed in the performance of that duty. Hence there is, and will be, no departure.

There are other complaints made as to alleged errors, but it is unnecessary to notice them. For the reason hereinabove indicated, the judgment is reversed and the cause is remanded for a new trial. The other judges concur.