EUGENE F. COTTON, Appellant, v. SHIP-BY-TRUCK COMPANY and EDWARD HARTZ.—85 S. W. (2d) 80.

Court en Banc, July 10, 1935.

*Wright & Rogers, William T. Ragland, Harry C. Clark* and *Robert T. Sloan* for appellant.

272

*Cowgill & Popham* and *John F. Cook* for Edward Hartz.

*Mosman, Rogers & Buzard* for Ship-By-Truck Company.

274

GANTT, J.—This came to me on reassignment. Action for personal injuries caused by the collision of an automobile, in which plaintiff was riding, with the rear of a truck parked on a highway between Ottawa and Lawrence, Kansas. Judgment for $30,000. On motion of defendants the court granted a new trial. Plaintiff appealed.

In substance the petition alleged that the Ship-By-Truck Company was a corporation organized under the laws of this State and that defendants, in violation of the law of Kansas, negligently parked the truck without a red tail light or any light visible to occupants of approaching cars, and negligently failed to provide any warning

of the presence of the truck on the highway, and that plaintiff was injured as a direct result of said negligence.

In substance the answers of defendants were general denials with allegations of specific negligence, on the part of plaintiff, including an allegation that plaintiff negligently failed to observe the truck and warn the driver of the automobile of its presence on the highway, thereby contributing to his injuries. The replies were general denials.

I. Defendants contend that plaintiff, in the exercise of due care, could have seen the truck and given warning in time for the driver to have avoided the collision by stopping or swerving the automobile.

There was evidence as follows: Plaintiff, a guest, was riding in a one-seated car moving north on a highway in Kansas. Carl Wilson was the driver of the car. A woman sat between the driver and plaintiff. Another woman, facing west, sat on plaintiff's lap. About two A. M. as the car proceeded on the east side of the pavement its northeast corner collided with the southwest corner of a large metal truck projecting from two to four feet over the east side of the pavement. The pavement was dry, the car's brakes and lights were in good condition, and weather conditions did not interfere with visibility through the windshield. The lights projected three hundred feet in front of the car. And from a point fifty to one hundred feet in front of the car the lights covered a width of thirty feet. It was a cold, hazy, foggy and dark night. The drab-colored truck, headed northeast, was parked without a red light or any light on or near the rear of the truck, and there was no warning of any kind to travelers on the highway. As the car approached the truck at twenty to thirty miles an hour, plaintiff "was looking straight ahead down the highway," but did not see the truck. The other occupants of the car also did not see the truck.

On the question of visibility there was evidence for plaintiff as follows:

Charles Pfab, a guest, was riding in a car moving north on the east side of the pavement. The lights on this car projected about one hundred fifty feet in front of the car. About five minutes after the collision, and while moving forty-five miles an hour, a dark object "loomed up" about two hundred feet in front of the car. He warned the driver. The brakes were applied and the car swerved to the left. It stopped one or two automobile lengths north of the truck. He saw the outline of a dark object just before he discovered it was a truck. Earlier in the night he passed the wreckage of another collision, which made him cautious.

Ralph Cramer also was riding in a car moving north on the east side of the pavement. The lights projected about two hundred twenty-five feet in front of the car. As he approached the point of collision, and while moving twenty-five miles an hour, the lights shone

on the bright surface of the wreckage two hundred twenty-five feet in front of the car. About the same time he saw the truck, and, with brakes not in the best condition, stopped the car eight feet south of the truck. He testified that he might have seen the truck two hundred and twenty-five feet in front of the car if he had known "it was there."

Edwin Young, Jack Hawk and Truman Brown also were in a car on the highway that night from Lawrence to Ottawa and return. In driving south on the west side of the pavement to Ottawa they passed the parked truck. They saw the truck "just before they got to it." The rear projected slightly over the east side of the pavement. In returning from Ottawa to Lawrence they drove north on the east side of the pavement. In the meantime the car had collided with the truck. On approaching the point of collision they noticed a southbound car parked in the middle of the pavement. The lights from this car interfered with visibility and caused them to stop. They noticed that the truck was in the same position on the pavement.

██ The testimony of these witnesses shows that it was possible to have seen the truck. As a matter of law, it does not show that plaintiff, in the exercise of due care under the circumstances, should have seen the truck. [Hayden v. Jack Cooper Transport Co., 134 Kan. 172, 5 Pac. (2d) 837, 1. c. 839; McCoy v. Pittsburg Boiler & Machine Co., 124 Kan. 414, 261 Pac. 30.]

The cases cited by defendants may be distinguished on the facts. In said cases either the plaintiff saw the object in time, by the exercise of due care, to have avoided the collision, or he did not, under the circumstances, exercise due care to have the car under control.

It is also contended that as a matter of law the relationship between the company and Hartz was that of employer and independent contractor, and for that reason the court should have directed a verdict for the company.

The evidence discloses no written or oral contract between the parties. In this situation the relationship must be determined from a consideration of the facts and circumstances in evidence, the nature of the business and the conduct of the parties. There was evidence as follows:

The company received merchandise and other property at its place of business in Kansas City, Missouri, for shipment by trucks to points in Kansas and Missouri. The territory was divided and covered by different routes. In part the property was transported in trucks belonging to the company. However, defendant Hartz transported all the property received by the company for shipment over the route in Kansas designated Harveyville route. He owned the truck, furnished the oil and gas and paid for the license. He had no permit from Kansas to engage in transportation business over the highways in said State. The trade name of the company was

"Graham-Ship-By-Truck" or "Ship-By-Truck." The words "Ship-By-Truck" were on the sides of Hartz's truck. Underneath said words and in smaller letters were the words "Hartz Freight Lines." The company kept a record of the consignor, property for shipment, destination, consignee and the freight charges paid or for collection. The freight rates were determined with reference to railroad rates in that territory. The property received and awaiting shipment was stored in the company's building according to routes. The company received and kept all prepaid freight charges. If not prepaid, or if the property was c. o. d., the driver of the truck collected from the consignee. Hartz made regular trips over the Harveyville route on Tuesdays, Thursdays and Saturdays. At ten A. M. on those days he reported to be company and took from the building the property for shipment over said route. He receipted to the company by signing a delivery ticket captioned "Graham Ship-By-Truck" and the company gave him a "slip" which contained full information as to the shipment. Hartz kept no record with reference to the shipment. All of the records were kept by the company. On returning from a trip Hartz delivered the money collected by him to the company. On other days Hartz did general hauling and in making the Harveyville trip he received cream and milk for transportation and delivery to creameries in Kansas City. After delivering the freight received from the company he did not return to Kansas City over the highway traveled in making the deliveries. He "circled around to pick up cream and milk." The company had no connection with the transportation of the cream and milk unless it was delivered at its place of business. Hartz was not on the payroll of the company. At the end of the month the company paid him 85% of the freight charges collected on shipments from the company's place of business. At the time of the collision Hartz had completed the delivery of freight received from the company and had milk and cream for delivery to creameries in Kansas City.

As a part of the answer of the company, its attorney made oath to a written statement in which he stated that the "denials" in the answer were true. The answer contained no "denials." The test of the sufficiency of an affidavit is whether it is so clear and certain that an indictment or information may be sustained on it if false. [2 C. J. 348.]

It will not be necessary to determine the question under said test for it is provided that where plaintiff sues a corporation it shall not be necessary to prove the fact of such incorporation unless the opposite party put such fact in issue by affidavit filed with the pleadings in the case. [Sec. 965, R. S. 1929.] It is clear that said section contemplates a specific denial of incorporation. The Legislature intended that the question should not be a hidden issue in the trial of the case. The rule is stated as follows:

"Because of many of the earlier abuses in pleading, and particularly as to the operation of general denials, many modern jurisdictions now require, where an instrument in writing is declared on, that a denial of the execution thereof must be by verified plea; and in addition (or under certain statutes in lieu of a verified plea) such an unequivocal or specific denial as shall put the execution of the instrument definitely in issue. Where the execution of the instrument is not so denied it is deemed to be admitted; and in such case it follows of course that proof of its execution is not required." [21 R. C. L., pp. 558-559.]

In the absence of a specific denial the incorporation is admitted, and the jury could find that the company is a common carrier. If so, the company could not delegate to a contractor the performance of its charter duties and thereby evade liability for injuries resulting from the contractor's negligence in the performance of said duties. [McCoy v. Railroad, 36 Mo. App. 445, l. c. 456; Burnes v. Railroad, 129 Mo. 41, l. c. 56, 31 S. W. 347; Chicago Economic Fuel Gas Co. v. Myers, 168 Ill. 139; North Chicago St. Ry. Co. v. Dudgeon, 184 Ill. 477; Mullery v. Telephone Co., 180 Mo. App. 128, 168 S. W. 213, 39 C. J., p. 1336; 16 R. C. L., p. 792; 14 R. C. L., p. 102; 7 Fletcher Cyc. Corp., p. 729; 6 Fletcher Cyc. Corp., p. 347; 28 A..L. R. 122; 23 A. L. R. 1003.] Thus it appears that a relationship of independent contractor would be no defense. As between the company and the public Hartz was the agent of the company.

Even so, it is contended that Hartz was not in the performance of any duty to the company at the time of the collision. It is argued that his duties to the company ended on delivery of the property received from the company for transportation. We do not think so. The relationship required the return of Hartz to Kansas City to make settlement with the company for money collected and to continue to transport property from the company's place of business. [39 C. J., pp. 1297-98.] Furthermore, the jury could find that the company consented to Hartz combining business of his own with its business. In Drake v. Norfolk Steam Laundry Corp. (Va.), 116 S. E. 668, the rule is stated as follows:

"Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the inquiry."

The questions submitted by the demurrers were for the determination of the jury.

■   II.   Defendants next contend that the principal instruction given at the request of plaintiff was erroneous.   They divide the instruction and then argue that as divided it did not limit the jury to a consideration of the specific negligence alleged and relied upon for recovery; that it did not require a finding that plaintiff was in the exercise of due care, and did not require a finding that plaintiff's injuries were the direct result of the negligence required to be found by the jury.   The instruction must be considered as a whole.   If so considered it submitted said issues to the jury.

In this connection it may be stated that it was not necessary to require the jury to find that the driver of the truck knew the tail light was not burning.   Under the statute he was guilty of negligence *per se* if the light was not burning.

Furthermore, it was not error to direct the jury that absent a tail light it was the duty of the driver of the truck to provide sufficient warning to travelers on the highway.   There was substantial evidence tending to show that no tail light was on the truck and that the driver of the truck provided no warning of the presence of the truck on the pavement.   The instruction was very lengthy and contained repetitions.   However, it was without prejudicial error.

■   III.   Defendants next contend that the court erred in refusing an instruction directing the jury that if the car was being driven at high speed and plaintiff had knowledge of that fact and made no protest to the driver, then plaintiff was guilty of contributory negligence and could not recover.   The instruction did not require a finding of causal connection between said negligence and the collision.

It is argued that it was error to refuse the instruction, citing Sharp v. Sproat, 111 Kan. 735.   It will not be necessary to determine the question under said case.   The court gave two instructions requested by defendants submitting the question of high speed and plaintiff's failure to protest.   The instructions given required the jury to find causal connection.   They conflicted with the refused instruction. The trial court cannot be convicted of error for refusing to give contradictory instructions requested by a party to a suit, "and this without reference to whether the court gives the one which is really correct or the one which is erroneous."   [Tetherow v. The St. J. & Des M. Ry. Co., 98 Mo. 74, 85, 11 S. W. 310; St. L., K. & N. W. Ry. Co. v. Knapp-Stout & Co., 160 Mo. 396, 411, 61 S. W. 300; Kansas City Southern Ry. Co. v. Second Street Imp. Co., 256 Mo. 386, 166 S. W. 296, 301; Green v. Wright, 36 Mo. App. 298, 303; Musser v. Adler, 86 Mo. 445.]

■   IV.   Defendants next contend that the court erred in refusing an instruction on the crowded condition inside the automobile.

The answer alleged specific contributory negligence. The crowded condition inside the automobile was not mentioned in the answers. For this reason it was not error to refuse the instruction. Other alleged errors in the instruction need not be considered.

V. Defendants next contend that the verdict was excessive and the result of passion and prejudice. There is nothing in the record tending to show passion and prejudice. In this situation plaintiff contends that the verdict should not be reduced, citing Manley v. Wells, 292 S. W. 67, l. c. 69. If a verdict is the result of passion and prejudice, it must be set aside. If it is not the result of passion and prejudice, but merely excessive, it may be cured by *remittitur*. In effect, it was ruled in the Manley case that a verdict may not be reduced unless it is the result of passion and prejudice. In so ruling, said opinion is in conflict with cases as follows: Greenwell v. Chicago, M. & St. P. Ry. Co., 224 S. W. 404; Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S. W. (2d) 1079; Varley v. Columbia Taxicab Co., 240 S. W. 218; Bond v. St. Louis-San Francisco Ry. Co., 288 S. W. 777, 315 Mo. 987; Spencer v. Railroad Co., 317 Mo. 492, 297 S. W. 353. The Manley case is overruled in so far as it conflicts with the above cases.

On the question of plaintiff's injuries there was evidence tending to show the following: The right kneecap was crushed; the right leg broken in four places; the right leg two inches shorter than the left leg and ninety per cent inflexible; the right ankle fifty per cent inflexible; the lower jaw broken in two places, as a result of which it recedes one-fourth of an inch, and the right side larger than the left side of the face. He suffered great pain for many months; at times experiences pain in the back and head; in cold weather the right leg aches, and he is extremely nervous which interferes with continuous rest at night.

He was in the hospital nine months and unable to work for nine months after leaving the hospital. In wages and expenses he lost $5000. At the time of the injury he was earning $120 a month, and at the time of the trial he was earning $90 a month. He was severely and permanently injured. Even so, we think the verdict should be reduced to $25,000. [Trowbridge v. Fleming, 269 S. W. 610, l. c. 616.]

The judgment is reversed and the cause remanded with directions to set aside the order granting a new trial, reinstate the verdict and enter an order that if plaintiff will, within ten days remit $5000 of the verdict, judgment will be entered for $25,000 as of the date of the original judgment. Otherwise the motion for a new trial will be sustained. All concur.