Stkwart, J.
 

 That plaintiff’s evidence established the fact that Bolton was guilty of negligence which caused plaintiff’s injuries was not questioned; the sole question before us is whether defendant is liable to plaintiff because of such negligence. The solution of that question depends upon the relation between Bolton and defendant.
 

 
 *108
 
 This court recently decided a case which concerned a relationship almost identical with the one in the present case.
 

 In
 
 Behner
 
 v.
 
 Industrial Commission,
 
 154 Ohio St., 433, the question presented was whether a person performing services for the defendant in the present case and who had been killed in an accident in the performance of such service was an employee of defendant and thus covered hy the Workmen’s Compensation Act.
 

 In the syllabus of that case it is stated:
 

 “1. Whether an individual performing service for another does so as an independent contractor or as an employee is ordinarily a question of fact, the deciding factor being in whom is vested the right of control or superintendence as to the details of the work. If the right to control the manner or means of performing the work is in the person for whom the service is performed, the relationship is that of employer and employee or master and servant; but if the control of the manner or means of performing the work is delegated to the person performing the service, the relationship is that of independent contractor.
 

 “2. A trucker who contracts with an Ohio corporation, engaged in the business of interstate commerce, to transport in interstate commerce without authority in his own right to engage in such transportation a shipment of freight by means of his own truck and equipment, serviced and maintained hy him, to a designated destination for a fixed compensation, and who has the right to choose the route to be taken and to control the details of the transportation enterprise, including times and hours of employment, is an ‘independent contractor’ and not an ‘employee,’ even though he is obliged to carry and does carry such corporation’s Interstate Commerce Commission plates on his equipment during the transportation operation.”
 

 Under the law as laid down in the
 
 Behner case,
 
 
 *109
 
 Bolton was unquestionably an independent contractor so far as defendant was concerned, but it is claimed that, since he was required to carry on his truck the Interstate Commerce Commission permit of defendant because Bolton was hauling coal in interstate commerce and had no such permit of his own, Bolton, at the time of the accident, was necessarily an employee of defendant by force of Administrative Rule No. 4 of the Bureau of Motor Carriers of the Interstate Commerce Commission, as authorized by Part II of the Interstate Commerce Act, Title 49, Section 301
 
 et seq.,
 
 U. S. Code.
 

 Administrative Rule No. 4 of August 19, 1936, provided as follows:
 

 “Question: Under what circumstances may a carrier add to its equipment by leasing a vehicle and obtaining the service of its owner-driver?
 

 “Answer: The lease or other arrangement by which the equipment of an authorized operator is augmented, must be of such a character that the possession and control of the vehicle is, for the period of the lease,, entirely vested in the authorized operator in such way as to be good against all the world, including the lessor; that the operation thereof must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employees of the authorized operator, that is to say, who stand in the relation of servant to him as master.”
 

 The rule, as above quoted, continued in force until August 9, 1939, when the rule was rephrased to its present form as follows:
 

 “The lease or other arrangement under which the carrier utilizes in its operations a vehicle which it does not own, whether or not including the services of an owner-driver or his representative, must be of such a character that the carrier will have the right to direct and control the operation of the vehicle at
 
 *110
 
 all times and be fully responsible therefor in all respects under all applicable provisions of law governing the duties and obligations of the carrier to the shipper and to the public generally.”
 

 In paragraph three of the syllabus in the Behner
 
 case,
 
 this court held with reference to the foregoing administrative rule:
 

 “3. The purpose of Administrative Rule No. 4 of the Bureau of Motor Carriers of the Interstate Commerce Commission, as authorized by Part II of the Interstate Commerce Act, Title 49, Section 301
 
 et seq.,
 
 U. S. Code, to regulate interstate common carriers, is to make a carrier responsible to the public for wrongs done or injury inflicted by the carrier or those acting for it throughout the entire course of any transportation project undertaken by the carrier, and under such rule the employing carrier, as well as his independent contractor performing transportation for such carrier, may be held liable to third persons for injuries resulting from the negligent conduct of the independent contractor in such transportation.”
 

 This court had previously held, in reference to the Motor Transportation Companies Act and the Private Motor Carriers Act, Sections 614-84 to 614-120a inclusive, General Code, as related to interstate common carriers by motor vehicle, that a defendant in a tort action, who had a certificate to engage in motor transportation business restricted to interstate commerce and attempted to delegate the duty of the carriage of goods to one who did not have such a certificate, could not escape liability upon the ground that such delegee was an independent contractor.
 
 Duncan
 
 v.
 
 Evans,
 
 134 Ohio St., 486, 17 N. E. (2d), 913.
 

 In the
 
 Duncan case
 
 this court, said in a
 
 per curiam
 
 opinion:
 

 “Apparently the Legislature intended to protect the public against loss from negligence on the part of
 
 *111
 
 any one using the highway in the business of transportation by motor truck. Therefore the trial courts were correct in charging the juries that these defendants could not escape liability by delegating their duties to independent contractors.”
 

 Thus it follows that if Bolton negligently injured plaintiff while the former was transporting coal in interstate commerce for defendant and using defendant’s Public Utilities Commission and Interstate Commerce Commission permits, having none of his own, defendant would be liable for Bolton’s negligence, even though Bolton was an independent contractor. But, as said in the
 
 Behner case,
 
 such liability exists only throughout the course of any transportation project undertaken by the carrier.
 

 The decisive question then arises: Was Bolton in the course of any transportation project, undertaken by defendant, at the time of the collision with plaintiff’s automobil
 
 e
 

 The Court of Appeals held such question to be one for a jury for the reason that a jury would have been warranted in finding that Bolton and defendant intended that Bolton would continue in its transportation service at least until the weigh sheet as to the tonnage Bolton had moved was returned by him to defendant’s office. That court cited many cases to the effect that upon a motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. That principle is manifestly correct. That court also paid a high tribute to the Restatement of the Law and quoted from Restatement of the Law of Torts, Section 428, as follows:
 

 “An individual or a corporation carrying on an activity which can be carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability
 
 *112
 
 for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.”
 

 We approve that statement. Where we part company with the Court of Appeals is as to the applicability of that principle to the facts in the present case.
 

 At the time of the accident Bolton was not carrying-on the activity for which he had been employed by defendant. His relationship with defendant had ceased about two hours before the accident, his truck was empty and he was not reporting back to defendant. Since Bolton owned his truck defendant had no knowledge as to where he was taking it or where he would keep it. Bolton did not park his truck upon any premises of defendant. Bolton had been to a beer garden and was on a route which led to his home, but, so far as any responsibility to defendant was concerned, Bolton could have gone anywhere he pleased, could have contracted for any work which suited him, and could have removed from his truck the Public Utilities Commission and the Interstate Commerce Commission permits of defendant because he did not need them at the time of the accident. He was in exactly the same situation as though he were driving his own automobile, with no objective except his own whim or purpose.
 

 Even though Bolton had with him the weigh sheet, that sheet was for his own purpose, to wit, to show the amount of money he had coming from defendant, and the record does not sustain the statement of the Court of Appeals to the effect that ‘£ such weigh sheets were also used by the defendant as the basis for determining the amount due it for such transportation service, it receiving a profit over and above the $1.20 per ton paid to Bolton. ’ ’
 

 It is true the record shows that defendant made an overriding profit on its arrangement with Bolton but it does not show that the weigh sheet in Bolton’s pos
 
 *113
 
 session was used by defendant as stated by the Court of Appeals. Assuredly, Bolton needed neither his own truck which he was driving nor defendant’s permit plates in order to transport the weigh sheet.
 

 Several cases have been cited in the briefs of counsel, not all of which are reconcilable, although in the case of
 
 Cotton
 
 v.
 
 Ship-by-Truck Co.,
 
 337 Mo., 270, 85 S. W. (2d), 80, relied upon by plaintiff, the driver of the truck was under an obligation to return to the terminal of his carrier hirer to deliver collections of money. In most of the other cases there were facts distinguishing them from the present case.
 

 It seems to us that a recent decision by the United States Court of Appeals for the Second Circuit is not only practically on all fours with the present case but that the opinion of the court therein is so logical and reasonable that we quote from it rather fully. The case is entitled
 
 Costello, Admx.,
 
 v.
 
 Smith,
 
 7 Federal Carriers Cases, 2272, and was decided January 19, 1950.
 

 The following question was there presented:
 

 ‘ ‘ Whether a common carrier of freight by motor vehicle, who possesses a certificate issued under Part II of the Interstate Commerce Act and employs an independent contractor, who does not possess such a certificate, to transport interstate freight under a ‘one-way’ lease of the contractor’s trailer-truck, is liable for a highway accident caused by the negligence of the contractor’s truck driver on the return trip of the empty truck.”
 

 In its opinion the court said:
 

 “It is conceded that if the collision had happened on the outbound trip to Providence, Johnson as lessee of the truck would have been liable for the truck driver’s negligence. A number of cases have so held.
 

 “This is on the principle that one who can lawfully operate only under a public franchise cannot escape
 
 *114
 
 liability by engaging an independent contractor to carry on the activity for Mm. Restatement, Torts, Section 428.
 

 “It is an exception to the independent contractor rule. However, that principle does not reach the present case. Here the independent contractor, Withers, had performed Ms contract with Johnson, the truck had been redelivered to Wither’s agent Smith, and in returning to Charlotte, N. C., Smith [the driver] was engaged on Wither’s [owner’s] business, not on Johnson’s. On general principles of agency negligence cannot be imputed to Johnson.
 

 “The appellant argues that the exception to the rule of nonliability for the torts of an independent contractor should cover the return trip of the truck no less than the outbound trip. The argument, if we understand it, relies both on the federal statute and on the local law of Connecticut.
 

 “As to the former, it is urged that to permit Johnson to escape liability will subvert the policy of the act in so far as it seeks to provide for protection of the public. See Sections 304 (a) (3), 315. Such appears to have been the view of Judge Barksdale in
 
 Hodges
 
 v.
 
 Johnson,
 
 52 F. Supp., 488 (D. C. Va.). With due respect we are constrained to disagree.
 

 “So far as concerns the safety of the public, determination of what regulation is required rests with the commission; the legislative grant is not to the courts. So long as the properly constituted authority is content not to regulate further than it has the operation of empty trucks after the termination of a ‘one-way lease, ’ the courts may not properly by judicial decision supplement the commission’s regulations. The act itself does not prescribe conduct for Withers. He was not a ‘common carrier by motor vehicle’ as defined in Section 303 (a) (14) of the act; hence he needed no certificate under Section 306. * * * This is conceded in the supplemental briefs of the parties and the brief
 
 *115
 
 of the commission as
 
 amicus curiae.
 
 Whether he was a ‘private carrier of property by motor vehicle’ as defined in Section 303 (a) (17) we need not say.
 

 “The commission’s brief states that ‘private carriers are subject to the act only with respect to safety of operations, hours of service of employees and standards of equipment, as indicated in Section 204 (a) (3)’; and in none of these respects was Withers shown to have been in default. Nor do the present regulations forbid a common carrier such as Johnson from making a one-way lease with an independent contractor such as Withers. In the absence of statutory command or of regulatory action by the commission, we cannot say that a one-way lease is so far contrary to the policy of the act that a court should impose liability on the lessee after the lease has ended.
 

 “Nor has any Connecticut decision been brought to our attention which would require or permit the imposition of such a liability under the local law. The appellant urges that in the absence of specific local authority we should rely upon Section 427 of the Eestatement of Torts as evidence of the law of Connecticut, The principle there stated is that ‘one who employs an independent contractor to do work which is inherently dangerous to others is subject to liability for bodily harm caused to them by the contractor’s failure to exercise reasonable care to prevent harm resulting from the dangerous character of the work.’
 

 “It may well be doubted whether a trailer-truck is an intrinsically dangerous instrumentality to be classed with ferocious animals or high explosives in applying the above-quoted principle. * * * But in any event, the principle assumes that the person held liable ‘employs’ an independent contractor to do dangerous work. Johnson’s employment of Withers ended with discharge of the cargo of the truck at Providence.
 

 “While it was probable that Smith would drive the
 
 *116
 
 truck back to Charlotte, N. C., it was immaterial to Johnson whether or not he did so. It was no part of the venture for which Johnson had employed the independent contractor that the truck should return empty. As soon as the load was discharged at Providence Smith was at liberty to obtain another load to transport in any direction for another carrier authorized under the act.”
 

 Since at the time of the accident in the present case Bolton, an independent contractor, was in no sense under defendant’s guidance or control; since all business relationships between them were at an end, to be resumed, if at all, only by a subsequent consent or agreement between them; and since at such time Bolton was far away from where he had completed Ms work for defendant and was not engaged in any transportation project for defendant, it would be neither logical nor reasonable to cast liability for Bolton’s acts upon defendant.
 

 It follows that the judgment of the Court of Appeals must be and is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Middleton, Taet, Matthias and Hart, JJ., concur.