Stewaht, J.
Shirks and Wiggins assign seven errors, but present only six questions of law, which they contend are involved in this cause.
The first question is the most serious. It is, to state it in the words of Shirks and Wiggins:
“Where an action for damages for negligence in the operation of a motor vehicle brought against two defendants charging that defendants were engaged in a joint enterprise and at the conclusion of plaintiff’s testimony plaintiff’s evidence fails to disclose that defendants were engaged in a joint enterprise but *491 that defendants stood in the relationship of contractor and independent contractor or principal and agent or master and servant, is it not error for the trial court to overrule defendant’s motion to require plaintiff to elect which defendant he would proceed against?” ;
Plaintiff strenuously argues that the undisputed evidence shows that as a matter of law Shirks and Wiggins were joint adventurers, and that, therefore, they are jointly liable.
In plaintiff’s petition he alleges joint adventure, and, therefore, the question could not be tested by demurrer.
Shirks and Wiggins tested it at the first opportunity at the end of plaintiff’s evidence.
The Court of Appeals cited the. case of Bennett v. Sinclair Refining Co., 144 Ohio St., 139, 57 N. E. (2d), 776, in holding as a matter of law that Shirks and Wiggins were engaged in a joint adventure. Particular reliance is placed upon the third paragraph of the syllabus of that case, which reads as follows:
“A joint adventure is a special combination of natural or artificial persons, who, without creating a partnership, combine their money, property or time, or all of them, in the conduct of some particular line of trade or some particular business deal for profit.”
That statement has been criticized as being too broad, for under its literal meaning it would make practically every relationship a joint adventure. If one, for wages, drove a bakery wagon belonging to his employer, such employee would be combining his time with his employer’s property in the conduct of a particular line of trade for profit, and yet it can scarcely be argued that such a situation would create a joint adventure.
We need not disturb any part of the syllabus in the Bennett case because it is applicable to the peculiar *492 facts of that case, in which there was joint ownership of equipment used, joint extension of credit to customers, joint promotion of sales, and joint sharing of losses.
In the present case the evidence is that Shirks engaged Wiggins and his equipment under a simple hiring agreement. Ordinarily, in order to create a joint adventure there must be an equal right in each of the adventurers to direct and govern the movements of each other in the control and management of the adventure.
The rule is stated in 38 American Jurisprudence, 924, Section 237, as follows:
“Parties can not be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there is a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management. No legal distinction exists between the phrases ‘joint enterprise’ and ‘the prosecution of a common purpose.’ ”
In the present case, under the undisputed facts, Shirks had full control over the movement and operation of the tractor-trailer it had hired from Wiggins; Shirks’ employees loaded the truck at Shirks’ property in Cleveland; Shirks’ dispatcher gave Wiggins his instructions; and under Shirks’ orders Wiggins was to contact certain of Shirks’ stations along the route designated in the carriage of the" freight from Cleveland to Harrisburg.
Wiggins had no interest in the freight which he was hauling except to get it safely to its destination, had no discretion except to haul the freight to its destination over the route selected by Shirks, paid all expenses for both himself and his equipment, and was *493 in no sense in such, a relationship as to make him liable for any negligence of Shirks, as would have been the case in a joint adventure where each adventurer is liable for the negligence of the others. Under the contract between Shirks and Wiggins there was no sharing of profits or losses. It is true that Wiggins received a percentage of the freight charges as his compensation, but what profits Shirks would make was of no interest to Wiggins, and certainly if Shirks should incur a net loss on his contract, Wiggins would not share in it.
It is argued that Wiggins would lose if the shipper did not pay the freight charges, but any employee or hired contractor would lose if his employer did not pay an agreed compensation.
Plaintiff argues that there was joint control in the arrangement between Shirks and Wiggins, for the reason that Wiggins was obliged to control his equipment as he was driving it along, but assuredly that kind of control is not the joint control contemplated in a joint adventure. An employee is under a duty to keep his own or his employer’s motor vehicle under control while he is driving it, but that is no element of a joint adventure.
Under the facts in the present case, Wiggins was clearly an independent contractor hired by Shirks to haul freight in interstate commerce.
Under the law, Shirks can not escape liability for the negligence of Wiggins while acting within the scope of his hiring by Shirks, even though Wiggins was an independent contractor.
Wiggins had no P. U. C. 0. or I. C. C. licenses. The licenses of Shirks were attached to Wiggins’ equipment, as was Shirks’ name and address. Under such circumstances, it is provided by Administrative Rule No. 4 of the Interstate Commerce Commission, as authorized by Section 301 et seq., Title 49, United States *494 Code, that a lease or other arrangement whereby a common carrier utilizes in his operations vehicles which he does not own, whether including the services of the owner, driver, or his representative, must be of such character that the carrier will have the right to direct and control the vehicle at all times and be fully responsible therefor in all respects, under all applicable provisions of law covering the duties and obligations of the carrier to the shipper and to the public generally. Under such rule Shirks undoubtely is liable to plaintiff for any negligence of Wiggins within the scope of his hiring by Shirks. However, it is not liable as a joint adventurer, but as a principal for an agent.
Ohio has fully sustained that position in the case of Duncan v. Evans, 134 Ohio St., 486, 17 N. E. (2d), 913, and this court held that a motor transport carrier, such as Shirks, can not escape liability by attempting to delegate its duties to an independent contractor. See, also, Simon, a Minor, v. McCullough Transfer Co., Inc., 155 Ohio St., 104, 98 N. E. (2d), 19.
In the present case, it is obvious that Shirks could not delegate its liability to an independent contractor who was using Shirks’ P. U. C. O. and I. C. C. licenses and placards bearing Shirks’ name. So long as Wiggins was operating for Shirks within the scope of his hiring, Shirks was liable for Wiggins’ negligence, not as a joint adventurer but under the doctrine of respondeat superior.
Under the doctrine of respondeat superior, the agent or servant is primarily liable for his negligence, and his principal or master is secondarily liable therefor.
In Meyer v. Cincinnati St. Ry. Co., 157 Ohio St., 38, 42, 104 N. E. (2d), 173, appears the following statement:
“For nearly one hundred years the courts of Ohio have struggled with the problem of proper joinder of *495 defendants under the above-quoted provision of the Code. It has been quite definitely established that joinder is not permitted where one of the defendants would be primarily liable and the other secondarily liable and this prohibition extends to those to whom the rule of respondeat superior applies and where the liability of one of the defendants would arise exclusively from the application of that rule.
“See Clark v. Fry, 8 Ohio St., 358, 72 A. Dec., 590; Morris v. Woodburn, 57 Ohio St., 330, 48 N. E., 1097; and French, Admr., v. Central Construction Co., 76 Ohio St., 509, 81 N. E., 751, 12 L. R. A. (N. S.), 669.”
In the case of Albers, Admr., v. Great Central Transport Corp., 145 Ohio St., 129, 60 N. E. (2d), 669, this court, relying upon Losito v. Kruse, Jr., 136 Ohio St., 183, 24 N. E. (2d), 705, 126 A. L. R., 1194, and Herron v. City of Youngstown, 136 Ohio St., 190, 24 N. E. (2d), 708, held as follows:
“A petition filed in a court of this state, joining as defendants an interstate motor carrier and a local motor carrier and disclosing on its face that the fatal injuries complained of' were occasioned solely by the negligence of the local carrier engaged by the interstate carrier to transfer an interstate shipment of goods in a terminal area within a municipality, presents a situation of primary and secondary liability and is de-' murrable for misjoinder of parties.”
The above holding was made by this court in the face of a provision of the United States Code that transportation by another motor carrier for an interstate motor carrier within a terminal area shall be considered to be performed by such latter carrier, this court holding that such provision is not designed to and does not affect the procedural question of joinder of parties or the question of primary or secondary liability.
This court could not have made a stronger pro *496 nouncement as to nonjoin ability in this state of parties who are primarily and secondarily liable in a negligence action.
It is our consideration that Shirks could not delegate its liability for any negligence of Wiggins within the scope of his hiring by Shirks, upon the ground that Wiggins was an independent contractor, but that such liability would arise by reason of the doctrine of respondeat superior, and that, therefore, although plaintiff might sue Wiggins as primarily liable or Shirks as secondarily so, he could not join them in one action as joint adventurers.
It follows that the Court of Common Pleas was in error in refusing to require plaintiff to elect which defendant he would pursue, and the judgment of the Court of Appeals must be reversed and the cause remanded for a new trial.
As to the other errors assigned by Shirks and Wiggins, we are in agreement with the Court of Appeals.
The reference to insurance was voluntarily made by Wiggins himself, when plaintiff’s counsel in good faith examined him with reference to the relationship between him and Shirks.
The trial court did not committ error in instructing the jury before argument as to a violation of the assured-clear-distance-ahead statute, without further instructions as to situations where the assured clear distance is suddenly cut down. The charge was correct, so far as it went, applied to the situation as claimed by plaintiff, and Shirks and Wiggins were entitled, if they saw fit, to submit a charge with reference to the cutting down of the assured clear distance.
As to the alleged error of the trial court in charging the jury before argument on the doctrine of “last clear chance,” in the absence of allegations in the petition which warranted the application of the rule of “last clear chance,” the charge complained of did not *497 mention “last clear chance,” and, although it should not have been given, it was so in line with a charge with reference to ordinary care that it can not be said to be prejudicial.
The claimed error of the trial court of too much repetition in reference to charging upon the assured clear distance is disposed of in the language of the Court of Appeals, as follows:
“This repetition in the charge is not to be commended but taking the record as a whole, we can not say that this error was prejudicial to the extent of requiring us to order a retrial on that error. ’ ’
Shirks and Wiggins contend they were entitled to a directed verdict for the reason that the verdict returned for plaintiff was upon evidence opposed to incontravertible physical law, and that such evidence shows that plaintiff was guilty of contributory negligence as a matter of law.
Prom a careful reading of the record, although the position of the vehicles after the accident would constitute a strong and potent argument that the accident happened as claimed by Shirks and Wiggins, rather than as claimed by the plaintiff, we can not say that as a matter of law Shirks and Wiggins were entitled to a directed verdict under the contradictory evidence adduced from all the witnesses in the case.

Judgment reversed and cause remanded.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taet, JJ., concur.