Stewart, J.
In the present case we are not concerned with any dispute in the evidence. No question is raised with reference to the right of Thornberry and insurance company to recover against Hancock for the damage to Thornberry’s automobile, Hancock not having appealed from the judgment against it.
The sole question before us is whether, at the time of the accident, the relationship between the driver of the tractor-trailer unit and Oyler was such that Oyler could be held liable for the damage to the automobile.
Oyler is a corporation located in Canton, Ohio, and is in the business of a common carrier of freight by motor vehicle in interstate and intrastate . commerce. Oyler owns certain equipment and also leases other equipment from other owners who are not the possessors of necessary Public Utilities Commission or Interstate Commerce Commission permits.
At the time of the accident with which this case is concerned, Oyler had leased from one Owens a tractor owned by him, under a written contract in which Owens agreed to carry and transport freight as Oyler might direct, and for the account of Oyler, under which contract Owens was to receive a certain percentage of the gross revenue realized from the carriage of such freight. Owens supplied a driver for the-tractor and paid such driver and expenses, such as oil, gasoline, etc.
Prior to March 5, 1952, the driver, named Patterson and hired by Owens, with Owens’ tractor and a trailer owned by *398 Oyler was dispatched to Chicago with a load of steel, the trailer displaying Oylers’ P. U. C. O. and I. C. C. permits.
Patterson drove the unit to Chicago and unloaded the steel. Patterson had been instructed to return with the unit to Oyler in Canton, with a load for Oyler if there was one in Chicago or with the trailer empty. However, Patterson, in disregard of his instructions and representing himself as the owner of the tractor-trailer unit, made contact through another agency with Hancock and, on his own account and for his own profit, without the knowledge of Oyler and with Oyler having no financial interest in the arrangement, undertook to haul a load of steel for Hancock to a steel company at Apollo, Pennsylvania, Hancock being described as the delivering carrier and Patterson having a bill of lading from the Ralston Steel Corporation, the shipper of the steel, to the consignee in Apollo.
It was while Patterson was driving this load of steel toward Pennsylvania that he had a breakdown with his tractor-trailer unit and parked the unit on the road, the accident involving Thornberry’s automobile occurring later.
The evidence is undisputed that the P. U. C. O. and I. C. C. permits belonging to Oyler and attached to the tractor-trailer unit did not authorize the hauling of freight by a common carrier from Chicago to Pennsylvania.
Under the arrangement among Oyler, Owens, and Patterson, ordinarily Owens and Patterson would be independent contractors, so far as Oyler was concerned, but by virtue of Administrative Rule No. 4 of the Bureau of Motor Vehicles of the Interstate Commerce Commission, as authorized by Part II of the Interstate Commerce Act, Section 301 et seq., Title 49, U. S. Code, which rule is to the effect that the arrangement under which a carrier utilizes in its operations a vehicle which it does not own, whether or not including the services of an owner-driver or his representative, must be of such a character that the carrier will have the right to direct and control the operation of the vehicle at all times and be fully responsible therefor in all respects, under all applicable provisions of law governing the duties and obligations of the carrier to the shipper and to the public generally, Oyler became liable to the public for Patterson’s conduct under the doctrine of respondeat *399 superior. Shaver v. Shirks Motor Express Corp., 163 Ohio St., 484, 127 N. E. (2d), 355. Therefore, under the circumstances of this case, Patterson was Oyler’s driver and Oyler was responsible for any of Patterson’s actions within the scope of his employment.
All parties agree that the law of master and servant governs in the situation with which we are confronted, but they diametrically disagree as to whether Patterson was within the scope of his employment as Oyler’s agent at the time of the accident.
All parties rely strongly on the case of Simon, a Minor, v. McCullough Transfer Co., Inc., 155 Ohio St., 104, 98 N. E. (2d), 19. In that case one Bolton was the owner of a dump truck, which he was driving. He was engaged by the McCullough Transfer Company to haul coal, whenever coal was available, from a strip mine to a plant at Struthers, Ohio, and was paid by McCullough so much per ton for the coal hauled. Bolton had no P. U. C. O. or I. C. C. permits, which McCullough did have and furnished to Bolton to attach on Bolton’s truck while engaged in the hauling of coal, and the permits were on the truck at the time of the accident involved in the case. After Bolton’s delivery was completed and while he was driving entirely on a mission of his own, although the permits were still attached to his truck, he negligently injured one Simon.
This court held that under Interstate Commerce Commission Rule No. 4, Bolton was McCullough’s servant or agent and McCullough was liable for his actions within the scope of his employment. However, since Bolton had entirely completed his “transportation project” with McCullough and was driving his truck entirely on a mission of his own, this court held that McCullough could not be held liable for Bolton’s negligent conduct.
Oyler contends that the McCullough case is authority for holding that it was absolved from responsibility for the driver Patterson’s conduct in reference to the accident in the present case, whereas Thornberry and insurance company contend that the McCullough case has reference only to a situation where a driver, for whose actions I. C. C. Rule No. 4 makes the owner of the equipment and permit plates liable, has entirely com *400 pleted Ms duties with reference to such owner; They contend further that Patterson was required, in the course of his duties, to return the tractor-trailer unit to Oyler at Canton, that the accident in which he was involved occurred on the road between Chicago and Canton, and that Oyler was responsible for Patterson’s conduct until he returned the unit to Oyler.
We are of the opinion that the Simon case does not support the contentions of any party.
The question in the present case is, since Patterson is deemed the employee of Oyler, and since Oyler was responsible for the acts of Patterson within the scope of his employment, did the accident occur while Patterson was within the scope of such employment, or had there been such a clear and complete deviation or departure by Patterson from the scope of Ms employment with reference to Oyler that Oyler was no longer responsible for his acts, under the doctrine of respondeat superior?
Thornberry and insurance company contend that, although Patterson. was hauling a load of steel in which Oyler had no interest, concerning which it knew nothing, from which it would derive no profit, and which was consigned to a point in Pennsylvania beyond Canton, nevertheless, since Patterson was on the road leading to Canton and still had the duty of returning the tractor-trailer unit to its owner there, he was still engaged in the business of Oyler and, therefore, Oyler must be responsible for his actions.
It is Hornbook law that a master is not responsible for the conduct of his servant, where the latter, going on a mission of his own, makes a clear and complete deviation and departure from the scope of his employment, the conduct occurring during the period of such deviation.
We are of the opinion that the facts in the present case indicate such a clear and complete deviation and departure. In CMcago, in disobedience of his instructions, Patterson took over as his own the tractor-trailer unit with Oyler’s permit plates and contracted to haul 25,000 pounds of steel for Hancock to a point in Pennsylvania where the unit was not licensed to go. This conduct of Patterson constituted a mission of Ms own, contrary to the instructions of his employer, and without *401 the latter’s knowledge or participation in any way. It' was for the purpose, as the Court of Appeals so aptly expressed it, of maldng a “fast buck” for Patterson himself. He was in the same situation as though he had, without permission, taken the unit from Oyler’s premises, without its consent, and used it entirely for his own purposes. It is true that he was on route No. 30 when the accident occurred, the route he would have been using had he been within the scope of his employmént, but it would be naive to believe that, even if he went through Canton with a load of steel in which Oyler had no interest, he would turn over the unit to Oyler. Patterson was on his way to Apollo, Pennsylvania, on his own account, carrying a load of steel for his own profit and contrary to his employer’s directions and instructions, and it seems to us that fie was without the scope of his employment and on a mission of his own just as.fully as if he were headed toward Canada.
It is arguable that if Patterson were returning to Canton to turn over the tractor-trailer unit to Oyler and had picked up a passengfer and agreed to transport him to Canton, even for compensation, he still would be within the scope of his employment with Oyler and there would be no such deviation or departure as to relieve Oyler of responsibility for Patterson’s acts. However, in the present case, at the time of the accident (from which, by the way, Patterson fled and has been unheard of since), Patterson was so much on a mission of his own, the place of the ultimate consummation of which was not Canton but a point in Pennsylvania, that it is inconceivable under the doctrine of respondeat superior that Oyler could be responsible for his acts.
Since Interstate Commerce Commission Rule No. 4 makes the driver of an independent contractor furnishing equipment to a shipper whose I. C. C. permits are attached to the equipment the employee or servant of the shipper, so far as the public is concerned, since the liability of the shipper under such circumstances is based upon the doctrine of respondeat superior, and since under such doctrine a clear and complete deviation by the driver from the scope of the shipper’s business relieves the .shipper of responsibility for the driver’s acts during the course of such deviation and departure, it follows that Oyler was not *402 responsible for the damages to Thornberry’s automobile, and the judgment of the Court of Appeals must be and it hereby is reversed and final judgment is rendered for Oyler.

Judgment reversed.

Weygandt, C. J., Hart, Zimmerman, Bell and Taft, JJ., concur.