Tart, J.
The question to be decided is whether the negligence of the driver of a truck, who is as to the owner of the truck an independent contractor, will be imputed to such owner merely because the operation of the truck at the time required use of a permit issued by the Public Utilities Commission of Ohio and notwithstanding that such required permit had been lawfully supplied by a third person for use and was being lawfully used on such truck. This court has held that, in such an instance, at least where negligence as distinguished from contributory negligence is in question, the negligence of the driver while acting within the scope of such third-person permit holder’s business will be imputed to such permit holder, even if such driver is as to such permit holder an independent contractor. Duncan v. Evans, 134 Ohio St., 486, 17 N. E. (2d), 913. See Shaver v. Shirks Motor Express Corp., 163 Ohio St., 484, 127 N. E. (2d), 355; Thornberry v. Oyler Bros., Inc., 164 Ohio St., 395; Simon, a Minor, v. McCullough Transfer Co., Inc., 155 Ohio St., 104, 98 N. E. (2d), 19; Behner v. Industrial Commission, 154 Ohio St., 433, 96 N. E. (2d), 403.
In seeking an answer to the question to be decided in the instant case, it will be helpful to consider the reasons for the holdings in the foregoing cases.
Several of those cases involved a regulation of the Interstate Commerce Commission providing that a carrier, when using a vehicle of another in its operations under an Interstate Commerce Commission permit, must do so under an “arrange *129 ment * * * of such, a character that the carrier will have the right to direct and control the operation of the vehicle at all times and be fully responsible therefor in all respects under all applicable provisions of law governing the duties and obligations of the carrier * * * to the public generally.” Thornberry v. Oyler, supra, 398; Simon v. McCullough Transfer Co., supra, 109, 110; Shaver v. Express Corp., supra, 493, 494; Behner v. Industrial Commission, supra, 438. In each of those cases, that regulation was given as the reason for imputing negligence of an independent contractor to the permit holder. No other reason for such a holding was suggested in those cases except by an occasional passing reference to Duncan v. Evans, supra (134 Ohio St., 486), as reaching the same result without the help of such a regulation, and by certain statements in the opinion of Simon v. McCullough Transfer Co., supra, which will be hereinafter referred to. That regulation is not applicable in the instant case and our attention has been called to no applicable regulation of the Public Utilities Commission of Ohio.
In the annotation at 16 A. L. R. (2d), 960, it is said:
“It is, of course, a general rule of law that an employer is not liable for the torts of an independent contractor. There are, however, certain well recognized exceptions to this rule, two of which have been invoked frequently in considering liability in connection with the operation of commercial motor vehicles. One is that an employer cannot escape liability for tortious injuries to others through creation of the independent-contractor relationship if the work to be performed is inherently dangerous to others. The other is that where such an operation may be carried on only by permission given by public authority, the relationship cannot be created for the purpose of escaping the liability for harm to others which would otherwise attach.”
As to the first of these two “exceptions,” it was advanced as a reason for the decision in the briefs in Healy, Admr., v. Universal Carloading & Distributing Co., which was reported with Duncan v. Evans, supra (134 Ohio St., 486); and it was also mentioned in the reasons advanced by the Court of Appeals for its decision in Duncan v. Evans, 60 Ohio App., 265, 274, 275, 20 N, E. (2d), 729, However, nothing is said about *130 that exception in either the opinion “by the court” or the dissenting opinion in Duncan v. Evans, supra (134 Ohio St., 486). Hence, it was apparently not relied upon as a reason by this court in that case. Also, it was apparently questioned as a reason for such a decision in what was said in the opinion in Simon v. McCullough Transfer Co., supra (155 Ohio St., 104), 113, 115. See Costello v. Smith, 179 F. (2d), 715, 16 A. L. R. (2d), 954; Eckard v. Johnson, 235 N. C., 538, 70 S. E. (2d), 488, 491. Although outside Ohio it has apparently been recognized in combination with the second exception as a reason for such a decision (Venuto v. Robinson, 118 F. [2d], 679; Bates Motor Transport Lines, Inc., v. Mayer, Admr., 213 Ind., 664, 672, 4 N. E. [2d], 91, 94; Barry v. Keeler, 322 Mass., 114, 126, 76 N. E. [2d,] 158, 164; Kemp v. Creston Transfer Co., 70 F. Supp., 521, 534 et seq.; Hodges v. Johnson, 52 F. Supp., 488, 490, 491), we do not believe it has heretofore been regarded by this court as a reason for decisions imputing negligence of an independent contractor-driver of a truck to someone else. If it had been generally so recognized, there would be some question as to the soundness of our recent decision in Thornberry v. Oyler, supra (164 Ohio St., 395), and possibly even that in Shaver v. Express Corp., supra (163 Ohio St., 484). See 27 American Jurisprudence, 518, Section 39. Thus, in Elliott v. Harding, 107 Ohio St., 501, 140 N. E., 338, 36 A. L. R., 1128, it was held that “while an automobile is not a dangerous instrument per se, it may become such if operated by one who is unskilled in its use” and that liability of the owner may rest “upon the combined negligence of the owner and driver; negligence * * * in intrusting the machine to an incompetent driver, and negligence * * * in its operation.” See also Gulla v. Straus, 154 Ohio St., 193, 93 N. E. (2d), 662; Mt. Nebo Baptist Church v. Cleveland Crafts Co., 154 Ohio St., 185, 93 N. E. (2d), 668; Williamson v. Eclipse Motor Lines, Inc., 145 Ohio St., 467, 62 N. E. (2d), 339, 168 A. L. R., 1356. If the operation of a large tractor-trailer, such as was involved in the Thornberry case, were regarded as “inherently dangerous to others” even if operated by one skilled in its use, then it would be at least doubtful whether Oyler should have been excused in that case from responsibility for damages resulting from the negligence of the driver to whom it *131 entrusted the operation of its trailer. In any event, there was no contention in the instant case that the operation of plaintiff’s truck was something that would be “inherently dangerous to others. ’ ’
As to the second of these two “exceptions,” referred to in the above quotation from 16 A. L. R. (2d), 960, it was adopted as a reason for imputing negligence of an independent contractor-driver to a permit holder in Liberty Highway Co. v. Callahan, Admx., 24 Ohio App., 374, 157 N. E., 708, and in Interstate Motor Freight Corp. v. Beecher, 37 Ohio App., 23, 174 N. E., 27; subsequently advanced in the briefs as a reason for the decision unsuccessfully sought by the defendant in error in Leonard v. Kreider, a Minor, 128 Ohio St., 267, 190 N. E., 634, and apparently rejected sub sileniio by this court’s decision in that case; later adopted again as a reason for imputing negligence of an independent contractor-driver to a permit holder in the Court of Appeals decisions in Stickel v. Erie Motor Freight, Inc., 54 Ohio App., 74, 6 N. E. (2d), 15 (motion to certify overruled), and Duncan v. Evans, supra (60 Ohio App., 265); apparently again rejected by this court when it gave a different reason for its decision in Duncan v. Evans, supra (134 Ohio St., 486); and then referred to with approval as a valid one of several reasons for such a decision in Simon v. McCullough Transfer Co., supra (155 Ohio St., 104), 111, 112, 113, 114. See also Costello v. Smith, supra (179 F. [2d], 715); War Emergency Co-op Assn. v. Widenhouse, 169 F. (2d), 403, 406; Cotton v. Ship-By-Truck Co., 337 Mo., 270, 278, 85 S. W. (2d), 80, 84; Kissell et al., Trustees, v. Motor Age Transit Lines, Inc., 357 Pa., 204, 209, 53 A. (2d), 593, 595. Cf. Quigley, Gdn., v. Toledo Railways & Light Co., 89 Ohio St., 68, 105 N. E., 185; annotation, 28 A. L. R., 122.
Thus, in Simon v. McCullough Transfer Co., supra (155 Ohio St., 104), 113, it is said in quoting with approval from the opinion in Costello v. Smith, supra (179 F. [2d], 715), with reference to imputing negligence of an independent contractor-driver to the holder of an Interstate Commerce Commission certificate, where such holder was using such driver in its operations under such certificate:
“ ‘This is on the principle that one who can lawfully oper *132 ate only under a public franchise cannot escape liability by engaging an independent contractor to carry on the activity for him. Restatement, Torts, Section 428.
“ ‘It is an exception to the independent contractor rule.’ ”
In the instant case, as will be hereinafter pointed out, Mercure was “one” who, with respect to the activity involved at the time of the collision in the instant case, could “lawfully operate only under a public franchise,” i. e., a P. U. C. O. permit; and therefore Mercure could not “escape liability by engaging an independent contractor [either plaintiff or Kiddon or both] to carry on” that “activity for him.” But, as will be hereinafter pointed out, while he was “eng’aged * * * as a private owner” of a motor vehicle “employed or used by a private motor carrier” such as Mercure, the statutes of Ohio did not require plaintiff to have a P. U. C. O. permit or any other “public franchise.” Subdivision (a) (1) of Section 614-103, General Code (Section 4923.02, Revised Code).
Also, in paragraph one of the syllabus in Quigley v. Toledo Railways & Light Co., supra (89 Ohio St., 68), it is stated:
“A street railway company receives its franchise to operate a street railroad subject to certain well defined duties to the public. It cannot relieve itself from these obligations by a lease or traffic arrangement by which it permits another company to make joint use of its tracks, except by legislative enactment authorizing such lease or arrangement with an express provision exempting it from liability for the acts of its licensee.” (Emphasis added.)
In the instant case, although Mercure received a “franchise” from the state to operate as a “private motor carrier,” plaintiff did not; and plaintiff’s activities at the time of the collision were not such as to require that he secure from the state such a “franchise.” Plaintiff did not therefore receive any “franchise * # * subject to * * # duties to the public” which are nondelegable, and his activities, at the time of the collision involved in the instant case, were not such as to require that he have such a “franchise.” Not being such a “franchise” holder or one who should have been such a “franchise” holder, there is no basis, under the foregoing authorities, for imputing negligence of his independent contractor to him. Thus, if the second of the two “exceptions” referred to in the above quota *133 tion from 16 A. L. N. (2), 960, is regarded as a valid reason for imputing negligence of an independent contractor-driver to someone else, it would not justify the imputation of such negligence to the plaintiff.
The only other apparent reason for imputing the negligence of such independent contractor-driver to someone else is that advanced as the reason for the decision in Duncan v. Evans, supra (134 Ohio St., 486), where it was said in the opinion “by the court”:
“The defendants rely upon the decision of this court in the case of Leonard v. Kreider, 128 Ohio St., 267, 190 N. E., 634, in which it was held that ‘no rule of law as to independent contractors is abrogated by Section 614-99, General Code, relating to motor transportation companies.’ However, subsequently to the collision in the Kreider case the Legislature amended many existing statutes and added Sections 614-103 to 614-128, Géneral Code, inclusive. The powers of the Public Utilities Commission have been extended to include the supervision and regulation of ‘private motor carriers’ and ‘motor carrier transportation agents.’ Before operating, the former must obtain a permit from the commission, and the latter must secure a license therefrom. Both must furnish bonds for the protection of the public, as do motor transportation companies. Apparently the Legislature intended to protect the public against loss from negligence on the part of anyone using the highway in the business of transportation by motor truck. Therefore the trial courts were correct in charging the jury that these defendants could not escape liability by delegating their duties to independent contractors.”
The only language in the statutes referred to, which indicates an intention to provide protection to the public from operations by someone who is not a common carrier (Section 614-99, General Code, now Section 4921.11, Nevised Code, contains similar provisions applicable to common carriers) but is using the highway in the business of transportation by motor truck, is found in Section 614-115, General Code, now Section 4923.08, Nevised Code (the provisions of Section 614-121 et seq., General Code, now Section 4925.01 et seq., Nevised Code, relative to motor carrier transportation agents apparently apply only to transportation of “persons”), and reads so far as pertinent :
*134 “No permit shall be issued by the commission to any private motor carrier until there shall have been filed with the commission a liability insurance certificate, policy or. bond satisfactory to the commission in such sum and with such other terms and provisions as the commission may deem necessary adequately to protect the public, having due regard for the number of persons and amount of property affected, which certificate, policy, policies or bonds, shall insure the private motor carrier and each employer authorized in its permit against loss sustained by reason of the death of or injury to persons and the loss of or damage to property resulting from the negligence of such private motor carrier, its agents and employees.”
Apparently what this court meant by what it said in Duncan v. Evans, supra (134 Ohio St., 486), was that, since the General Assembly had required a motor transportation permit holder to have “liability insurance * * * against * * * death of or injuries to persons and * * * damage to property resulting from the negligence of” the permit holder so as “adequately to protect the interests of the public” (Sections 614-99 and 614-115, General Code, now Sections 4921.11 and 4923.08, Bevised Code; see also Section 614-126, General Code, now Section 4925.06, Bevised Code), and since the purpose of so protecting the interests of the public with insurance of the permit holder could be readily defeated if such a permit holder could relieve itself of responsibility for negligence in the operation of its vehicle under the permit by employing an independent contractor for such operation, therefore the General Assembly by necessary inference expressed an intention that the insured permit holder should be responsible under the doctrine of respondeat superior for the actions and conduct of its driver within the scope of the business conducted by the permit holder pursuant to the authority provided by the permit.-
However, the requirement of insurance, which is apparently the real basis for this reason for imputing negligence of an independent contractor-driver to someone else, is a requirement of insurance from the permit holder, — not from anyone else. Unless therefore plaintiff was required to have a permit, there would appear to be no justification for imputing the negligence of his independent contractor-driver to plaintiff. As hereinafter pointed out, plaintiff was not required to have a permit *135 from the Public Utilities Commission at the time of the collision involved in the instant case.
It is not contended there was and we assume there was not anything improper in having plaintiff and the driver of plaintiff’s truck operating as independent contractors for the permit holder Mercure and using that permit holder’s permit in so operating. This is apparently contemplated by subdivision (a) (1) of Section 614-103, General Code (now subdivision (A) (1) of Section 4923.02, Revised Code), which reads so far as pertinent:
“ (a) The term ‘private motor carrier’ or ‘contract carrier by motor vehicle’ shall include every * * * person * * * not included in the definition under Section 614-84 [defining “motor transportation company” or “common carrier by motor vehicle”] * * * when engaged in the business of private carriage of persons or property, or both, or of providing, or furnishing such transportation service, for hire, in or by motor-propelled vehicles of any kind whatsoever, including trailers, over any public highway in this state, but shall not include any * * * person * * *
“(1) Engaged or proposing to engage, directly or indirectly, as a private oioner or operator of motor vehicles employed or used by a private motor carrier, as herein defined, or by a motor transportation company, as defined in Section 614-84 * * (Emphasis added.)
Admittedly neither Mercure nor plaintiff came within the definition of a “motor transportation company,” as defined in Section 614-84, General Code. Mercure obviously was included within the definition of a “private motor carrier” set forth in the above-quoted statute; and plaintiff was not so included, because he was a person such as described in subparagraph (1) of paragraph (a) of that statute. Thus, by reason of the operation of plaintiff’s truck at the time of the collision (in hauling coal for a mining company under a contract between such mining company and Mercure), Mercure was required to have a permit (Section 614-104, General Code, now Section 4923.04, Revised Code), but neither plaintiff nor the driver of his truck was.
In endeavoring to avoid responsibility for the negligence of the driver of the plaintiff’s truck, plaintiff is in a sub *136 stantially different position from that in which the permit holder Mercure would be if he sought to avoid responsibility for that negligence. Mercure could not have been doing what he was doing without a permit (Sections 614-103 and 614-104, General Code, now Sections 4923.02 and 4923.04, Eevised Code); and, in determining whether to issue a permit to Mercure, the state through its Public Utilities Commission presumably relied upon the responsibility of Mercure. It is therefore reasonable for the state to expect Mercure to be 'responsible for what he contracted with others to have done for him pursuant to the privileges granted to him by the issuance to him of his permit. The state has given no such privileges to the plaintiff and is not therefore in the same position to expect the plaintiff to be responsible for something that is not done pursuant to any privilege granted by the state to him. To be sure, the plaintiff may have taken advantage of the privilege granted by the state to Mercure but certainly the state did not in any way rely upon plaintiff’s responsibility in granting that privilege to Mercure and in recognizing (see subdivision (a) (1) of Section 614-103, General Code) the right of someone such as plaintiff to take advantage of it. Furthermore, if the plaintiff is permitted to avoid responsibility for the negligence of the driver of his truck on the ground that such driver was an independent contractor for and not a servant or employee of plaintiff (cf. War Emergency Co-op Assn. v. Widenhouse, supra [169 F. (2d), 403] ; Barry v. Keeler, supra [322 Mass., 114], 123, 129; and Kissell v. Motor Age Transit Lines, supra [357 Pa., 204], 208, 209, where the driver was a servant or employee of and not an independent contractor for the owner of the vehicle), no member of the public will receive any less protection than the state could reasonably expect, because the one upon whom the state relied, Mercure, will still be responsible for that negligence. As hereinbefore pointed out, the statutes required Mercure to carry insurance protecting against liability to the public, but did not require plaintiff to provide such protection for the public.
In the dissenting opinion in Duncan v. Evans, supra (134 Ohio St., 486), it is stated that the defendant in one of the two cases reported “did not have a certificate of necessity and convenience” but that its independent contractor operator did *137 have and it is then stated that defendant ‘ ‘ could not have been required to do more” than have its goods hauled by another common carrier who had fully complied with the law. However, the statement of facts discloses that that defendant was “engaged in business as a common carrier,” and the brief of that defendant conceded that fact. Further, it is apparent from a reading of the opinion “by the court” that one of the premises upon which it was rested was that that defendant was operating as a common carrier at the time of the collision. The dissenting opinion therefore apparently takes the unsound position that that defendant, by not having a permit, could escape the consequences which would have followed if it had had a permit. Certainly, the mere fact that it operated through someone who did have a permit would not excuse that defendant from having a permit which the law required it to have. See Werner Transp. Co. v. Dealer’s Transport Co., 102 F. Supp., 670. It cannot therefore be reasonably argued that either of the decisions by this court in the Duncan case can support the conclusion that responsibility for acts of an independent contractor should be imposed upon someone connected with transportation by motor vehicle who was not required to have a permit from the Public Utilities Commission of Ohio.
Our conclusion is that, at least where it has not been established that the operation of a truck is inherently dangerous to others, the negligence of the driver of such truck, who is as to the owner of the truck an independent contractor, will not be imputed to such owner, merely because the operation of the truck at the time requires use of a permit from the Public Utilities Commission of Ohio, if at that time such required permit has been lawfully supplied by a third person for use and is being lawfully used on such truck.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman and Stewart, JJ., concur.